654 S.E.2d 364

**Christopher Lee DAVIS, Petitioner Below, Appellant,**

v.

**Thomas McBRIDE, Warden, Mount Olive Correctional Complex, Respondent Below, Appellee.**

**No. 33199.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 12, 2007.

Decided Oct. 12, 2007.

Lonnie C. Simmons, DiTrapano, Barrett & DiPiero, PLLC, Charleston, WV, for the Appellant.

Darrell V. McGraw, Jr., Attorney General, R. Christopher Smith, Assistant Attorney General, Charleston, WV, for the Appellee.

PER CURIAM.

The appellant herein and petitioner below, Christopher Lee Davis [hereinafter "Mr. Davis"], appeals from an order entered January 17, 2006, by the Circuit Court of Kanawha County. By that order, the circuit court denied Mr. Davis's request for a post-conviction writ of habeas corpus concluding that the State's exercise of a peremptory strike to remove the only African–American juror from the jury panel did not amount to constitutional error. On appeal to this Court, Mr. Davis argues that the aforementioned peremptory strike violated his constitutional right to a fair trial. Upon a review of the arguments of the parties, the record presented for appellate consideration, and the pertinent authorities, we affirm the ruling of the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

During a bar fight on September 9, 1999, Mr. Davis, who is African–American and who was carrying a semiautomatic handgun, shot Kraig Davis and Kenneth Davis, Kraig's younger brother. Both Kraig and Kenneth Davis are Caucasian. Kraig Davis later died from his injuries; Kenneth Davis recovered from his injuries. Mr. Davis turned himself in to the Kanawha County Sheriff's Department the following day and was charged with

one count of first-degree murder[1] for the death of Kraig Davis and one count of malicious wounding[2] for the shooting of Kenneth Davis.

During jury selection for Mr. Davis's criminal trial, prospective juror Barbara Patterson [hereinafter "Ms. Patterson"] was questioned on voir dire. Ms. Patterson was the only African–American prospective juror on the jury panel. She first indicated that she would not be available for jury duty the following Monday because she had to take her son to college in Orlando, Florida. Ms. Patterson also indicated that she personally knew two of the witnesses on the defense's witness list: Reverend Richard Bullet [hereinafter "Reverend Bullet"] and Reverend Cornell Byers [hereinafter "Reverend Byers"]. As to Reverend Bullet, Ms. Patterson testified that she had known him for a long period of time and that Reverend Bullet and her husband were fellow pastors who performed ministerial tasks together. Ms. Patterson further testified that her husband and Reverend Byers "are real good friends." After responding that she did not believe that these relationships with these potential witnesses would have any bearing on whether she believed these witnesses to be truthful, the trial court found that there was no reason to strike prospective juror Ms. Patterson for cause.

Later during the voir dire process, however, Ms. Patterson raised her hand and stated to the trial court, "Judge, the longer I sit here, I don't think I can be impartial ... [b]ecause of the closeness of the relationship I have with ... the [two defense] witnesses." At this point, the trial court indicated that it would strike Ms. Patterson for cause, but counsel for Mr. Davis asked the court to refrain from so ruling offering that he would not call Reverend Bullet and Reverend Byers as witnesses for the defense in an attempt to ensure Ms. Patterson's impartiality. Accordingly, the trial court did not remove Ms. Patterson from the jury panel. As voir dire progressed, however, the State renewed its concerns about allowing Ms. Patterson to serve as a juror particularly in light of her admission that she did not think she could be impartial.

The trial court then recalled all the prospective jurors to question them individually. Ms. Patterson was asked whether her partiality would be compromised if the defense called the two Reverends as witnesses to which she answered, "[s]ome." When Ms. Patterson was asked to explain this answer, she stated that, "[w]ell, those two men, I do know are men of God, so I would really have to take what they say and believe it." Thereafter, the State exercised one of its peremptory strikes to remove Ms. Patterson from the jury panel. To explain its removal of the only African–American juror from the jury panel, the State provided four reasons for its decision to exercise its peremptory strike:

1. First-degree murder is statutorily defined as

   [m]urder by poison, lying in wait, imprisonment, starving, or by any willful, deliberate and premeditated killing, or in the commission of, or attempt to commit, arson, kidnapping, sexual assault, robbery, burglary, breaking and entering, escape from lawful custody, or a felony offense of manufacturing or delivering a controlled substance as defined in article four [§§ 60A-4-401 et seq.], chapter sixty-a of this code, is murder of the first degree. All other murder is murder of the second degree....

   W. Va.Code § 61-2-1 (1991) (Repl.Vol.2005). *See also* W. Va.Code § 61-2-2 (1965) (Repl.Vol. 2005) ("Murder of the first degree shall be punished by confinement in the penitentiary for life.").

2. W. Va.Code § 61-2-9(a) (1978) (Repl.Vol.2000) describes the crime of "malicious wounding" as follows:

   [i]f any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony, and, upon conviction, shall be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall be guilty of a felony, and, upon conviction, shall, in the discretion of the court, either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars.

   The Legislature subsequently amended this section, but such changes did not alter the above-quoted definition of the crime of malicious wounding. *See* W. Va.Code § 61-2-9(a) (2004) (Repl.Vol.2005).

(1) Juror Patterson is acquainted with the two witnesses and has already made a determination as to those witnesses' credibility;

(2) Juror Patterson expressed concerns and exhibited facial expressions and body language that indicate that she does not wish to serve as a juror;

(3) Juror Patterson indicated that she would be unavailable for the entire week, beginning the week after trial began; and

(4) Juror Patterson approached and patted one of the Petitioner's [defendant Mr. Davis's] family members on the back.

Counsel for Mr. Davis objected to the State's exercise of its peremptory strike to remove Ms. Patterson, but the trial court overruled the objection.

Mr. Davis's trial by jury ensued and, on September 8, 2000, the jury returned a verdict against Mr. Davis convicting him of one count of first-degree murder,[3] with a recommendation of mercy, and one count of malicious wounding.[4] By order entered January 10, 2001, the circuit court sentenced Mr. Davis to a term of life imprisonment, with mercy, for the first-degree murder conviction and a term of two to ten years' imprisonment for the malicious wounding conviction, with the sentences to be served consecutively. Mr. Davis then appealed his convictions and resultant sentences to this Court, which appeal we denied by order entered September 20, 2001.

Thereafter, on July 22, 2003, Mr. Davis filed a pro se petition for habeas corpus relief. After counsel had been appointed for Mr. Davis, he filed an amended habeas corpus petition on July 16, 2004, claiming, among other errors, that "[t]he Court committed reversible error in permitting the State to exercise a peremptory challenge to strike the sole black juror on the jury panel." Following an omnibus hearing, the circuit court, by order entered January 17, 2006, denied Mr. Davis's request for relief. In so doing, the circuit court ruled that

the Court concludes that the Petitioner [Mr. Davis] presented a prima facie case

sufficient to shift the burden to the prosecution. However, the Court also concludes that the prosecution provided a neutral, non-pretextual, non-discriminatory challenge where their challenge was based on juror Patterson's initial hesitancy to serve on the jury and her subsequent statements that she would have to believe the two defense witnesses because they were "men of God" and that she was questioning her impartiality.

The Court also concludes that the fact that the Petitioner offered not to call the two witnesses with whom juror Patter[son] was acquainted does not alleviate the prosecution's valid concerns of juror Patterson's ability to be impartial. A reasonable juror in juror Patterson's position may have associated the "men of God" with the defendant and this may have caused her to believe any and all witnesses the defendant called in his defense.

The Court also concludes that the State's use of a peremptory challenge to strike juror Patterson was consistent with the requirements set forth in Batson [v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986),] and was not a violation of the Petitioner's equal protection rights under the State and Federal Constitutions. Therefore, the peremptory strike ground of the Petitioner's petition must be an[d] is hereby **DENIED** and **DISMISSED**.

From this order, Mr. Davis now appeals to this Court.

## II.

### STANDARD OF REVIEW

In the proceedings below, the circuit court denied Mr. Davis the relief he requested in his petition for a writ of habeas corpus. When we review a circuit court's order granting or denying relief in habeas corpus, we consider several factors:

[i]n reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition

---

3.  See note 1, *supra*.

4.  See *supra* note 2.

under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). Furthermore, "[f]indings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal by this Court unless such findings are clearly wrong." Syl. pt 1, *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975), *cert. denied*, 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976). Guided by these standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

On appeal to this Court, Mr. Davis has asserted two assignments of error, only one of which this Court has accepted for appellate review: whether prospective juror Patterson, who was the sole African–American prospective juror on the jury panel, was properly removed from the jury panel through the State's exercise of a peremptory strike.[5] In summary, the circuit court determined that the State had properly exercised a peremptory strike to remove prospective juror Patterson from the jury panel. Before this Court, Mr. Davis argues that Ms. Patterson should not have been removed from the jury panel and that her removal was constitutional error in violation of his right to a fair trial. By contrast, the State contends that it asserted valid, non-pretextual reasons for exercising its peremptory strike to remove Ms. Patterson from the jury panel and that the circuit court did not err by so ruling.

5. The other assignment of error raised by Mr. Davis, but rejected by the majority of the Court, questioned whether applying the requirements of *Losh v. McKenzie*, 166 W.Va. 762, 277 S.E.2d 606 (1981), to his post-conviction request for relief in habeas corpus violates the attorney-client privilege and the work product privilege. Justice Starcher would have granted review of Mr. Davis's appeal as to all issues raised therein.

6. The full text of W. Va.Code § 62–3–3 (1949) (Repl.Vol.2005) directs:

In a case of felony, twenty jurors shall be drawn from those in attendance for the trial of

The primary goal of the jury selection process is to obtain a jury that will fairly and impartially decide the case at hand. *See* Syl. pt. 1, in part, *State v. Hatfield*, 48 W.Va. 561, 37 S.E. 626 (1900) ("The object of the law is, in all cases in which juries are impaneled to try the issue, to secure men for that responsible duty whose minds are wholly free from bias or prejudice[.]"). To ensure this neutrality, prospective jurors may be removed from a jury panel for cause. *See* W. Va.Code § 56–6–12 (1923) (Repl.Vol.2005) ("[I]f it shall appear to the court that such person is not a qualified juror or does not stand indifferent in the cause, another shall be called and placed in his stead for the trial of that cause. . . ."). *See also* Syl. pt. 3, *O'Dell v. Miller*, 211 W.Va. 285, 565 S.E.2d 407 (2002) ("When considering whether to excuse a prospective juror for cause, a trial court is required to consider the totality of the circumstances and grounds relating to a potential request to excuse a prospective juror, to make a full inquiry to examine those circumstances and to resolve any doubts in favor of excusing the juror."). Parties also are permitted to remove a limited number of potential jurors through the use of peremptory strikes. *See* W. Va.Code § 56–6–12 ("[I]n every case, unless it be otherwise specially provided by law, the plaintiff and defendant may each challenge four jurors peremptorily.").

In felony criminal cases, however, where an individual's liberty interests are at stake, additional factors must be considered to ensure that the defendant receives a fair trial by an impartial jury of his/her peers. *See* W. Va.Code § 62–3–3 (1949) (Repl.Vol. 2005).[6] At issue in the case *sub judice* is a

the accused. If a sufficient number of jurors for such panel cannot be procured in this way, the court shall order others to be forthwith summoned and selected, until a panel of twenty jurors, free from exception, be completed, from which panel the accused may strike off six jurors and the prosecuting attorney may strike off two jurors. The prosecuting attorney shall first strike off two jurors, and then the accused six. If the accused failed to strike from such panel the number of jurors this section allows him to strike, the number not stricken off by him shall be stricken off by the prosecuting attorney, so as to reduce the panel to

defendant's right to be tried by a jury free from racial bias in its selection. On this point, we previously have held that "[i]t is a violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. *Constitution* for a member of a cognizable racial group to be tried on criminal charges by a jury from which members of his race have been purposely excluded." Syl. pt. 1, *State v. Marrs*, 180 W.Va. 693, 379 S.E.2d 497 (1989). A challenge regarding the racial composition of a jury achieved through the State's exercise of its peremptory strikes is known as a *Batson* challenge. *See generally Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

When a defendant challenges the racial composition of the jury, he/she must make out a prima facie case of racial discrimination in its selection:

> To establish a prima facie case for a violation of equal protection due to racial discrimination in the use of peremptory jury challenges by the State, "the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prose-

cutor used that practice to exclude the venireman from the petit jury on account of their race." [Citations omitted.] *Batson v. Kentucky*, 476 U.S. 79 at 96, 106 S.Ct. 1712 at 1722, 90 L.Ed.2d 69 (1986). Syl. pt. 2, *State v. Marrs*, 180 W.Va. 693, 379 S.E.2d 497.

After the defendant has made a prima facie case of racial discrimination, the State may, in turn, present evidence that it exercised its peremptory challenge(s) in an unbiased manner and that it had a valid, nonpretextual reason for removing the excluded juror(s): "[t]he State may defeat a defendant's prima facie case of a violation of equal protection due to racial discrimination in selection of a jury by providing non-racial, credible reasons for using its peremptory challenges to strike members of the defendant's race from the jury." Syl. pt. 3, *State v. Marrs*, 180 W.Va. 693, 379 S.E.2d 497. *Accord* Syl. pt. 12, *State v. Rahman*, 199 W.Va. 144, 483 S.E.2d 273 (1996) ("Striking even a single black juror for racial reasons violates equal protection, even though other black jurors remain on the panel. The focus of the trial court's analysis should be on whether the State's reason for a challenged strike is pretextual, and not on the overall composition of the jury."). Finally,

> [i]n assessing a *Batson* challenge, the trial court must consider a party's assertion that a similarly situated prospective juror was not challenged, both in determining whether the defendant has stated a prima facie case of discrimination, and in deciding whether the explanation given by

twelve, who shall compose the jury for the trial of the case.

Whenever, in the opinion of the court the trial is likely to be a protracted one, the court may direct that not more than four jurors, in addition to the regular jury, be called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have the same functions, powers, facilities and privileges as the regular jurors. An alternate juror who does not replace a regular juror

shall be discharged after the jury retires to consider its verdict. Each side is entitled to one peremptory challenge in addition to those otherwise allowed by law if one or two alternate jurors are to be impanelled, and two peremptory challenges if three or four alternate jurors are to be impanelled. The additional peremptory challenges may be used *against an alternate juror only, and the other* peremptory challenges allowed by this section may not be used against an alternate juror. *See also* W. Va.Code § 62-3-4 (1923) (Repl. Vol 2005) ("No challenge of a juror other than that provided for in the preceding section [§ 62-3-3] shall be allowed the State or the accused, except for cause, and all challenges shall be tried by the court in which they are made.").

the prosecution was a pretext for racial discrimination. In order for the trial court to make the latter determination, the State must articulate a credible reason for the different treatment of similarly situated black and white jurors.

Syl. pt. 13, *State v. Rahman,* 199 W.Va. 144, 483 S.E.2d 273.

■ Applying this law to the facts of the case *sub judice,* it is first necessary to determine whether Mr. Davis has established a prima facie case of racial discrimination. There is no dispute that Mr. Davis is African–American, prospective juror Patterson also is African–American, and that Ms. Patterson was the only African–American member of the jury panel. It is also uncontroverted that the State used one of its peremptory strikes to remove Ms. Patterson from the jury panel. Based upon these facts, we find that Mr. Davis has established a prima facie case of racial discrimination in the selection of his jury. *See* Syl. pt. 12, *State v. Rahman,* 199 W.Va. 144, 483 S.E.2d 273; Syl. pt. 1, *State v. Marrs,* 180 W.Va. 693, 379 S.E.2d 497. *See also* Syl. pt. 2, *State v. Marrs,* 180 W.Va. 693, 379 S.E.2d 497. Accordingly, we affirm the circuit court's ruling in this regard.

■ Having determined that Mr. Davis has established a prima facie case of racial discrimination, we next must ascertain whether the State has presented evidence of nondiscriminatory, nonpretextual reasons for its removal of Ms. Patterson sufficient to overcome this presumption of discrimination. During the voir dire proceedings below, counsel for the State explained the reasons for the State's use of a peremptory strike to remove Ms. Patterson from the jury panel:

THE COURT: You want to tell me why you took this name off [of the peremptory strike sheet]?

MS. WHITMYER [trial counsel for the State]: Ms. Patterson? The reason for using a peremptory strike was the fact that she is acquainted with two of the witness[es] that Mr. McIntyre [trial counsel for Mr. Davis] may call in his case. She indicated that her husband is a pastor, and that her husband has a ministerial relationship with at least one of Mr. McIn-

tyre's witnesses, who is also a pastor. She described both of the potential witnesses as men of God.

She initially expressed her concerns here at the bench in front of you, and you were ready to strike her for cause at that time. Mr. Morris [trial counsel for the State] and I have observed her facial expressions throughout *voir dire* today, as well has [sic] her body language, and it is Mr. Morris's opinion that she does not wish to be here to serve as a juror.

Additionally, she indicated that she would be unavailable for the entire week beginning next week because she is taking her son to college. And finally, sir, on the break we were informed by members of the victim's family, the Kraig and Kenny Davis family, that this juror approached Mr. Christopher Davis's family and patted at least one of the family members on the back. We asked one of the bailiffs, John Rutherford, if he, in fact, had observed this behavior, and he did confirm that he did see Ms. Patterson approach the family members.

. . . .

[W]e are highly concerned about the fact on the break she was observed by different people approaching the defendant's family.

We believe that those reasons are nonracial in nature and are legitimate reasons.

After receiving testimony from an individual who had observed Ms. Patterson patting a member of defendant Mr. Davis's family on the shoulder and hearing Mr. Davis's objections to the State's exercise of a peremptory strike to remove Ms. Patterson, the trial court found that the State had provided valid, nonpretextual reasons for removing Ms. Patterson from the jury panel and permitted her to be excused. During its consideration of Mr. Davis's request for post-conviction habeas corpus relief, the circuit court also determined that the State had defeated Mr. Davis's prima facie case of racial discrimination.

Upon the record before us, we similarly conclude that the State overcame the presumption of racial bias by presenting valid, nondiscriminatory, nonpretextual reasons for

exercising its peremptory strike to remove Ms. Patterson from the jury panel-reasons that had absolutely no relationship to Ms. Patterson's race. *See* Syl. pt. 3, *State v. Marrs,* 180 W.Va. 693, 379 S.E.2d 497. A central theme of the State's reasons for excusing Ms. Patterson is her lack of impartiality as evidenced by her statements indicating she would believe the defense witnesses, Reverend Bullett and Reverend Byers, because they are "men of God" and her interactions with Mr. Davis's family in the courtroom. Another, and perhaps even more telling, example of Ms. Patterson's lack of impartiality is her own *sua sponte* statement during voir dire indicating that she questioned her ability to be a neutral juror:

> JUROR PATTERSON: Judge, the longer I sit here, I don't think I can be impartial.
>
> THE COURT: You say the longer that you sit there you don't think you can be impartial? Tell me why you think that.
>
> JUROR PATTERSON: Because of the closeness of the relationship I have with [Reverend] Cornell Byers and Reverend Bullett, the witnesses.

Following Ms. Patterson's revelation that she did not think that she could be impartial, the trial court stated that it would excuse Ms. Patterson. Only after counsel for Mr. Davis asked the court to "give [him] the opportunity to consider withdrawing my representations that I will be calling those two persons [Reverend Bullett and Reverend Byers] as witnesses," did the trial court agree to permit Ms. Patterson to sit on the jury panel. ▬▬▬ We have long held that,

> [t]he relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant. Even though a juror swears that he or she could set aside any opinion he or she might hold and decide the case on the evidence, a juror's protestation of impartiality should not be credited if the other facts in the record indicate to the contrary.

Syl. pt. 4, *State v. Miller,* 197 W.Va. 588, 476 S.E.2d 535 (1996). *See also* Syl. pt. 5, *O'Dell v. Miller,* 211 W.Va. 285, 565 S.E.2d 407 ("Once a prospective juror has made a clear statement during *voir dire* reflecting or indicating the presence of a disqualifying prejudice or bias, the prospective juror is disqualified as a matter of law and cannot be rehabilitated by subsequent questioning, later retractions, or promises to be fair."). Here, Ms. Patterson voluntarily admitted that she did not believe she could be an impartial juror. Given the totality of the circumstances and the numerous factors suggesting that Ms. Patterson would not be a neutral and unbiased juror, we conclude that the circuit court did not err by determining that the State's use of its peremptory strike to remove Ms. Patterson from the jury panel was proper.

Finally, we must consider the propriety of the State's peremptory strike of Ms. Patterson in light of the fact that the State did not exercise peremptory strikes to remove other, similarly situated Caucasian jurors from the jury panel. *See* Syl. pt. 13, *State v. Rahman,* 199 W.Va. 144, 483 S.E.2d 273. In addition to Ms. Patterson, Mr. Davis complains that two other members of the jury panel, Deanna Hayes [hereinafter "Ms. Hayes"] and Doris Akers [hereinafter "Ms. Akers"], also indicated that they were acquainted with persons listed on the parties' lists of potential witnesses, but that the State did not use its peremptory strikes to remove these jurors from the panel.[7]

After the trial court read the list of potential witnesses, it inquired of the jury panel whether any of its members were acquainted with any of the potential witnesses. Prospective juror Hayes testified, "I am a nurse at CAMC and I know Dr. Kessell. I know of him; I've never worked with him." Additionally, prospective juror Akers stated,

> JUROR DORIS AKERS: Mr. Arlo Cook, one of the witnesses; I don't know him personally. I believe that they lived in our neighborhood at one time.

Mr. Davis does not assign error with respect to such other prospective jurors.

---

7. The voir dire transcript indicates that additional prospective jurors indicated knowledge of or an acquaintance with potential witnesses, but

THE COURT: Mr. Arlo Cook lives on Pansy Drive now.

Okay, would you consider yourself a friend, or is he just somebody that you knew?

JUROR AKERS: No, he is just somebody that I know of. I wouldn't know this gentlemen [sic] if I saw him.

Both Ms. Hayes and Ms. Akers remained on the jury panel and served as jurors for Mr. Davis's trial. Of the witnesses of whom these jurors had knowledge, Dr. Kessel testified at trial; Mr. Cook did not.

From the facts previously recited, it is evident that neither Ms. Hayes nor Ms. Akers have as personal a relationship with the potential witnesses as Ms. Patterson has with Reverend Bullett and Reverend Byers, both of whom she stated she knows "socially." Moreover, unlike Ms. Patterson, neither Ms. Hayes nor Ms. Akers informed the trial court that they "[did not] think [they could] be impartial" as did Ms. Patterson. Because Ms. Hayes and Ms. Akers indicated that they could be impartial jurors, while Ms. Patterson stated that she could not be impartial, it was not error to permit the State to use a peremptory strike to remove Ms. Patterson from the jury panel even though the State did not also strike jurors Hayes and Akers. In ruling upon Mr. Davis's post-conviction habeas corpus petition, the circuit court determined that no error had been committed in this regard. We affirm this ruling.

## IV.

### CONCLUSION

For the foregoing reasons, the January 17, 2006, order of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.