# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

### January Term 2017

_____

No. 15-0931

_____

FILED

**March 9, 2017**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
Plaintiff Below, Respondent
v.
**LEONARD C. LEWIS,**
Defendant Below, Petitioner

_____

**Appeal from the Circuit Court of Berkeley County**
**The Honorable John C. Yoder, Judge**
**Criminal Case No. 12-F-138**

**AFFIRMED**
_____

Submitted: February 28, 2017
Filed: March 9, 2017

**Ben J. Crawley-Woods, Esq.**
**Ashton & Crawley-Woods PLLC**
**Martinsburg, West Virginia**
**Counsel for the Petitioner**

**Christopher C. Quasebarth, Esq.**
**Chief Deputy Prosecuting Attorney**
**Cheryl K. Saville, Esq.**
**Assistant Prosecuting Attorney**
**Berkeley County Prosecutor's Office**
**Martinsburg, West Virginia**
**Counsel for the Respondent**

**JUSTICE KETCHUM delivered the Opinion of the Court.**
**JUSTICE DAVIS dissents in part and concurrs in part and reserves the right to file a separate opinion.**

**SYLLABUS BY THE COURT**

1. "The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." Syl. pt. 2, *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994).

2. "In interpreting and applying a generally worded kidnapping statute, such as W.Va. Code, 61-2-14a, in a situation where another offense was committed, some reasonable limitations on the broad scope of kidnapping must be developed. The general rule is that a kidnapping has not been committed when it is incidental to another crime. In deciding whether the acts that technically constitute kidnapping were incidental to another crime, courts examine the length of time the victim was held or moved, the distance the victim was forced to move, the location and environment of the place the victim was detained, and the exposure of the victim to an increased risk of harm." Syl. pt. 2, *State v. Miller*, 175 W.Va. 616, 336 S.E.2d 910 (1985).

3. "When considering whether to excuse a prospective juror for cause, a trial court is required to consider the totality of the circumstances and grounds relating to a potential request to excuse a prospective juror, to make a full inquiry to examine those circumstances

and to resolve any doubts in favor of excusing the juror."  Syl. pt. 3, *O'Dell v. Miller*, 211 W.Va. 285, 565 S.E.2d 407 (2002).

4.  "The preliminary issue of whether a sufficient chain of custody has been shown to permit the admission of physical evidence is for the trial court to resolve.  Absent abuse of discretion, that decision will not be disturbed on appeal."  Syl. pt. 2, *State v. Davis*, 164 W.Va. 783, 266 S.E.2d 909 (1980).

**Justice Ketchum**:

The petitioner, Leonard C. Lewis ("Lewis"), appeals from the August 25, 2015, order in which the Circuit Court of Berkeley County sentenced him to life imprisonment, without the possibility of parole, and additional consecutive sentences. The sentences were imposed upon Lewis's convictions, following a jury trial, of (1) attempted first degree murder, (2) malicious assault, (3) kidnapping, with no recommendation of mercy, (4) domestic assault and (5) domestic battery. All of the convictions arose from the brutal stabbing and beating of Lewis's former wife, Sylvia Thomas ("Ms. Thomas"), during which, according to the State, Ms. Thomas was detained in her apartment against her will for seven hours and denied medical assistance.

Lewis presents a number of assignments of error, including alleged error in the admission of evidence under Rule 404(b) of the *West Virginia Rules of Evidence* and the failure of the circuit court to grant a judgment of acquittal on the kidnaping conviction. Upon review, however, we find Lewis's assignments of error without merit. Accordingly, this Court affirms Lewis's convictions and the Circuit Court of Berkeley County's August 25, 2015, sentencing order.

## I. Factual Background

In 2004, Lewis moved from Washington, D.C., to Martinsburg in Berkeley County. Soon after, Lewis obtained employment at the Martinsburg Veterans Center. Ms. Thomas also worked at the Center, and she and Lewis were married in 2006. The evidence of the State revealed that, on February 15, 2011, an incident occurred in the marital residence during which Lewis, accusing Ms. Thomas of seeing another man, choked her, grabbed her by the hair, held a knife to her chest and threatened to kill her.

Ms. Thomas immediately left the residence, reported the incident to the police and obtained an apartment at another location in Martinsburg. Ms. Thomas and Lewis remained separated from that point forward. Lewis was subsequently without a permanent residence, and Ms. Thomas occasionally allowed him to sleep in the living room of her apartment and use her computer.

The events leading to Lewis's convictions occurred in the early morning hours of November 16, 2011. Shortly after midnight, Ms. Thomas returned to her apartment after working at the Veterans Center. Lewis was in the apartment and had been using the computer. Ms. Thomas went to her bedroom and, shortly thereafter, got up to use the bathroom. She testified at trial that Lewis approached her and made sexual advances which she refused. He then flew into a rage, accused her of being with another man and stated that

2

he was going to kill her. According to Ms. Thomas, Lewis began a lengthy, brutal attack in which he repeatedly stabbed her with a knife,[1] pulled out sections of her hair and beat her in the face with the lid of a wok pan.[2]

Of particular significance to this appeal is the period, consisting of approximately seven hours, between the time the State maintains the attack began, shortly after midnight, and 7:35 a.m. later that morning when Lewis was taking Ms. Thomas from her apartment to get medical help. Ms. Thomas testified that, during that interim period, she was bleeding profusely, feared for her life and pleaded for Lewis to take her to the VA hospital in Martinsburg. According to Ms. Thomas, Lewis refused, stating: "No, you're going to tell somebody." Ms. Thomas testified:

> Q. Okay. And to be very clear, he didn't let you go, and what was it that he said to you? You just said it a moment ago?
> A. He told me, he said I had better not tell anybody. "Don't tell nobody."

---

[1] Ms. Thomas testified that, although she was able to grab the knife from Lewis and throw it into the living room, Lewis obtained another knife from the kitchen and continued to stab her. Both knives were butcher-length knives.

[2] The injuries sustained by Ms. Thomas were substantial. The State's evidence at trial was that the knife wounds were to Ms. Thomas's scalp, right arm, hands and chest. The arm was cut "wide open," resulting in partial loss of the use of Ms. Thomas's right hand, her dominant hand. In addition, Ms. Thomas sustained facial contusions, tear duct damage and wrist injuries. She has undergone multiple surgeries, including eye surgery, and the placement of two plates in her face. Trooper Conner testified that when he observed Ms. Thomas shortly after the events of November 16, 2011, she had a patch on her eye, her hair was torn out and she "had bandages all over her."

3

Ms. Thomas testified further that, desperate for medical assistance, she suggested to Lewis that he drive her to the VA hospital in Washington, D.C. Ms. Thomas testified that, although Lewis was originally from the Washington, D.C., area, she concluded that he was less likely to be recognized there, whereas he would be "arrested right on the spot" if they went to a hospital in Martinsburg. Leaving the apartment, Lewis placed Ms. Thomas in her Dodge Durango and purchased gas for the vehicle at 7:35 a.m. in Martinsburg. Lewis then drove Ms. Thomas to the VA hospital in Washington, D.C., arriving there at approximately 10:00 a.m. According to Ms. Thomas, Lewis told hospital personnel that Ms. Thomas received her injuries from being attacked by a woman or women near a 7-Eleven store in Martinsburg.

Lewis, who testified at trial, stated that, when Ms. Thomas arrived home after the attack near the 7-Eleven, he administered first aid but could not convince her to let him take her to the VA hospital in Martinsburg. He then drove Ms. Thomas to the VA hospital in Washington, D.C.

Ms. Thomas was hospitalized for several days. Thereafter, she returned to Martinsburg and reported to the West Virginia State Police that Lewis attacked her. Ms. Thomas and Lewis are now divorced.

## II. Procedural Background

On May 23, 2012, the Berkeley County grand jury returned an indictment charging Lewis with committing the following offenses against Ms. Thomas: (1) attempted first degree murder; (2) malicious assault; (3) kidnapping, after Lewis committed malicious assault; (4) second offense domestic assault; and (5) second offense domestic battery.

In August 2013, the State filed a notice of intent to use evidence at trial of a domestic violence incident Lewis committed in February 2011 against Ms. Thomas which resulted in a conviction on October 13, 2011.[3] The State sought admission of the evidence pursuant to Rule 404(b) of the *West Virginia Rules of Evidence*. The notice stated:

> The proposed 404(b) evidence shows that the Defendant was convicted of Domestic Battery on or about October 13[th] 2011. This incident occurred only nine months prior to the brutal attack on Ms. Thomas. According to Trooper See's complaint, on February 15[th] 2011, the Defendant accused Ms. Thomas (who was his wife at the time) of being with a boyfriend. He then attacked her in their apartment. He started strangling her and said that "he was going to kill her." At one point in the struggle he pulled out a knife and put it to her chest, and later cut her on her hand. * * *

---

[3] Among the charges in the indictment, Lewis was charged with second offense domestic assault and second offense domestic battery. As to both charges, the indictment alleged that Lewis had been "convicted of domestic battery in the Magistrate Court of Berkeley County on the 13[th] day of October, 2011." The October 13, 2011, domestic battery conviction referred to in the indictment is the same incident set forth in the State's notice of intent to use Rule 404(b) evidence.

5

This evidence clearly shows that the Defendant had a motive, jealousy, to commit the crime at hand. It further shows that the Defendant actually did intend to kill Ms. Thomas. Indeed, the Indictment charges the Defendant with Attempted Murder, and the State must prove that the Defendant actually intended to kill Ms. [Thomas] and not just maliciously wound her. The Defendant's statement that "he was going to kill her" is very good evidence on that point. Lastly, it shows that the Defendant had a common scheme or plan to use a knife to kill Ms. Thomas. The Defendant used a knife in both the February and November attacks.

A pre-trial hearing was conducted on October 31, 2013, during which the State's Rule 404(b) evidence was considered. Trooper J. D. See, who investigated the February 15, 2011, incident, testified that Ms. Thomas stated that Lewis accused her of seeing another man, threatened to kill her, and pointed a knife at her chest. The circuit court determined that the evidence was admissible under Rule 404(b), finding the incident occurred and was committed by Lewis; the incident was relevant; and its probative value outweighed the prejudicial effect.

The indictment upon which Lewis was tried was a superceding indictment returned by the grand jury on May 23, 2012. The kidnapping charge therein was brought pursuant to *W.Va. Code*, 61-2-14a [1999]. Subsection (a) of the statute provided in part:

Any person who, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this state or within this state, or otherwise kidnap any other person, or hold hostage any other person for the purpose or with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage of any sort, or for the purpose or with the intent of shielding or protecting himself, herself or others from bodily harm or of evading capture or arrest after he or she or

6

they have committed a crime shall be guilty of a felony and, upon conviction, shall be punished by confinement by the division of corrections for life, and, notwithstanding the provisions of article twelve, chapter sixty-two of this code [concerning probation and parole], shall not be eligible for parole[.]

Lewis filed a motion to dismiss the kidnapping charge as incidental or intrinsic to the other charged offenses. Lewis alleged, in the alternative, that the kidnaping charge should proceed under the more recent 2012 version of *W.Va. Code*, 61-2-14a, effective June 8, 2012. The 2012 statute substituted a new subsection (a) as follows:

> Any person who unlawfully restrains another person with the intent:
> (1) To hold another person for ransom, reward, or concession;
> (2) To transport another person with the intent to inflict bodily injury or to terrorize the victim or another person; or
> (3) To use another person as a shield or hostage,
> shall be guilty of a felony and, upon conviction, shall be punished by confinement by the Division of Corrections for life, and, notwithstanding the provisions of article twelve, chapter sixty-two of this code [concerning probation and parole], shall not be eligible for parole.[4]

Emphasizing the unlawful restraint language in the new subsection (a), Lewis stated in the motion that his alleged conduct toward Ms. Thomas, which included taking her to the

---

[4] Both the 1999 and 2012 versions of the statute authorized a jury to recommend mercy, thereby rendering the defendant eligible for parole. Moreover, both the 1999 and 2012 versions of the statute provided lesser periods of incarceration where the victim was returned, or permitted to return, without bodily harm.

7

hospital in Washington, D.C., would more appropriately fall under *W.Va. Code*, 61-2-14g [2011]. That statute, entitled "Unlawful restraint," provides in subsection (a):

> (a) Any person who, without legal authority intentionally restrains another with the intent that the other person not be allowed to leave the place of restraint and who does so by physical force or by overt or implied threat of violence or by actual physical restraint but without the intent to obtain any other concession or advantage as those terms are used in section fourteen-a [*W.Va. Code*, 61-2-14a] of this article is guilty of a misdemeanor and upon conviction shall be confined in jail for not more than one year, fined not more than $1,000, or both.

In response, the State emphasized that the 2012 version of *W.Va. Code*, 61-2-14a, was not in effect when the crimes against Ms. Thomas were committed or when the superceding indictment was returned in May 2012. The State further emphasized that the indictment's kidnapping charge tracked the language of the applicable statute, *i.e.*, the 1999 version of *W.Va. Code*, 61-2-14a.

Nevertheless, the circuit court included the offense of unlawful restraint in its instructions to the jury, and the verdict form set forth the following options concerning the kidnapping charge: (1) guilty of kidnapping with no recommendation of mercy, (2) guilty of kidnapping with a recommendation of mercy, (3) guilty of unlawful restraint, and (4) not guilty.

8

Lewis's trial began on November 12, 2013. The State's witnesses included Trooper Conner, the investigating officer, who spoke with Ms. Thomas in late November 2011. Trooper Conner, describing his examination of Ms. Thomas's apartment, testified to the presence of two butcher-length knives, dried pools of blood and blood splatters throughout the dwelling, and hair on the floor. Ms. Thomas testified regarding the November 16, 2011, attack by Lewis, as well as the prior incident of February 2011. Trooper J. D. See, who investigated the February 2011 incident also testified. Rule 404(b) limiting instructions were given to the jury during the testimony of Ms. Thomas and Trooper See regarding the February 2011 incident.

Lewis testified at trial and maintained that Ms. Thomas arrived at the apartment in the early morning hours after having been "jumped by some girls." He stated that, although Ms. Thomas was bleeding and had facial injuries, she refused to call the police or be taken to a local hospital. Lewis testified that he applied bandages to Ms. Thomas and later drove her to the VA hospital in Washington, D.C., at her request.

On November 15, 2013, the jury returned a verdict finding Lewis guilty of the following offenses: (1) attempted first degree murder; (2) malicious assault; (3) kidnapping

9

with no recommendation of mercy; (4) domestic assault; and (5) domestic battery.[5] Thereafter, the circuit court denied Lewis's motion for a judgment of acquittal and/or a new trial. Addressing the kidnapping conviction, the circuit court stated in the order:

> The Court is particularly persuaded that the Kidnapping was not incidental due to the length of time the victim was detained and the exposure of the victim to an increased risk of harm. The Court finds, based on the evidence presented at trial, that the victim was detained in her own apartment for possibly as long as seven hours. The Court finds that there was ample evidence presented at trial to show that the Defendant confined the victim in the apartment for the purpose of evading capture or arrest after he attacked her. Further, with each passing moment that she was detained without medical treatment her risk of bleeding to death increased substantially.

On February 10, 2014, the circuit court entered an order sentencing Lewis to three to fifteen years for attempted first degree murder; two to ten years for malicious assault; life without eligibility for parole for kidnapping; six months in the regional jail for domestic assault first offense; and one year in the regional jail for domestic battery first offense. The circuit court directed that the sentences be served consecutively.[6]

---

[5] The indictment charged Lewis with second offense domestic assault and second offense domestic battery. However, as the result of an earlier ruling by the circuit court, the jury only deliberated upon those charges as first offenses. Lewis was then sentenced upon convictions of domestic assault "first offense" and domestic battery "first offense."

[6] During the sentencing hearing, the circuit court noted the heinous and brutal nature of the attack, Ms. Thomas's permanent injuries, and Lewis's lack of remorse.

On August 25, 2015, the circuit court re-sentenced Lewis for purposes of appeal to this Court.

### III. Standards of Review

Lewis's assignments of error raise various legal principles and standards of review. Accordingly, this Court will address those principles and standards as they pertain to each assignment of error. However, we note generally syllabus point 3 of *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000):

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

*Accord* syl. pt. 1, *State v. Ervin*, 238 W.Va. 77, 792 S.E.2d 309 (2016). *See* syl. pt. 6, in part, *State v. Vilela*, 238 W.Va. 11, 792 S.E.2d 22 (2016) (Upon motion for judgment of acquittal, evidence is viewed in the light most favorable to the prosecution.).

11

## IV. Discussion

## A. Rule 404(b) Evidence

Lewis contends that the circuit court committed error by admitting the Rule 404(b) evidence of the February 15, 2011, domestic violence incident. He asserts, *inter alia*, that the incident was too remote and unfairly prejudicial to warrant its admission at trial.

At the time of Lewis's trial, Rule 404(b) stated in part:

> (b) *Other crimes, wrongs, or acts*. - Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. In may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

In West Virginia, the leading case on Rule 404(b) is *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994), which requires the trial court to conduct an *in camera* hearing when Rule 404(b) evidence is going to be offered at trial. Syllabus point 2 of *McGinnis* states that, at the conclusion of the *in camera* hearing,

> the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is

offered, and we recommend that it be repeated in the trial court's general charge to the jury at the conclusion of the evidence.

*Accord* syl. pt. 1, *State v. Nelson*, 221 W.Va. 327, 655 S.E.2d 73 (2007). As the *McGinnis* opinion states, this Court reviews a circuit court's decision "to admit evidence pursuant to Rule 404(b) under an abuse of discretion standard." 193 W.Va. at 159, 455 S.E.2d at 528. *Accord State v. Williams*, 198 W.Va. 274, 279, 480 S.E.2d 162, 167 (1996).

In the current matter, the hearing conducted prior to trial included the testimony of Trooper See who investigated the February 15, 2011, incident. The Trooper's testimony suggested motive, in Lewis's jealousy; intent, in threatening to kill Ms. Thomas; and plan, in the use of a knife. The circuit court determined that the evidence was admissible under Rule 404(b), finding: the incident occurred and was committed by Lewis; the incident was relevant; and its probative value outweighed the prejudicial effect. As to the latter determination, the State asserts before this Court that, given the heinous nature of the November 16, 2011, knife attack and beating of Ms. Thomas, it is unlikely that the jury simply relied on the prior incident in rendering a verdict.

On both occasions, Lewis accused Ms. Thomas of seeing another man, threatened to kill her, and drew a knife to her chest. The occasions were nine months apart. The circuit court (1) conducted a *McGinnis* hearing on the Rule 404(b) evidence, (2) gave limiting

13

instructions before Ms. Thomas and Trooper See described the February 2011 incident to the jury, and (3) gave a limiting instruction during the charge to the jury at the conclusion of the trial.

We find no abuse of discretion in the admission of the Rule 404(b) evidence and conclude this assignment of error is without merit.

**B. The Facebook Printout**

Lewis contends that the circuit court committed reversible error by failing to exclude a late-disclosed Facebook printout and by failing to grant a mistrial after Ms. Thomas referred to blood on the printout during her testimony at trial.

Ms. Thomas testified that, during the attack, Lewis brandished a Facebook printout he found in the apartment which showed a conversation between Ms. Thomas and another man. The printout was not seized by Trooper Conner until approximately one year after the attack and was not disclosed to the defense until one week before trial.[7] Lewis filed a motion to exclude the printout on the ground of late disclosure and because there was an unidentified

---

[7] The prosecutor explained to the circuit court that he was not aware the Facebook printout was in the custody of law enforcement until he was preparing for trial. The prosecutor further stated that he immediately secured the printout and disclosed its existence to defense counsel.

14

substance on the printout which the defense had not had time to analyze. The circuit court ruled that the State could question witnesses at trial for the printout's introduction in evidence, but, due to the late disclosure, no mention of the unidentified substance, which appeared to be blood stains, could be made. The Facebook printout was admitted in evidence at trial, subject to the circuit court's ruling.

However, Ms. Thomas commented while testifying for the State that her blood was on the printout. Lewis's counsel moved for a mistrial. The prosecutor stated that Ms. Thomas's comment was not responsive to any of the State's questions. The circuit court denied the motion for a mistrial.

Regarding the State's late disclosure of the printout, this Court held in syllabus point 2 of *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994): "The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." *Accord*, syl. pt. 4, *State v. Anderson*, 233 W.Va. 75, 754 S.E.2d 761 (2014).

Here, the nature of the conversation in the Facebook printout was immaterial at trial. The focus concerning the printout was the fact that Ms. Thomas had communicated with a man other than Lewis, which suggested that the attack was motivated by jealousy. The import of the printout, however, as allegedly surprising Lewis on a material fact or hampering his case, is deprived of significance in view of the State's other evidence. Before addressing the Facebook printout, Ms. Thomas testified that Lewis accused her of seeing other men "all the way through the marriage" and that the problem was "an ongoing thing," even when they were first dating. In addition, the issue of Lewis's jealousy was plainly disclosed as a subject of the State's Rule 404(b) evidence.

Ms. Thomas's comment that blood was on the printout was unresponsive to the State's questions, which were designed to identify the document Lewis brandished during the attack. There is nothing in the record to indicate that the prosecutor sought to evade the circuit court's ruling prohibiting mention of blood on the document. Moreover, Ms. Thomas's comment, while unsolicited and improper, is undeserving of a mistrial when viewed within the totality of the State's evidence of the multiple stabbings and the resulting blood stains found throughout the apartment.

A circuit court's decision to grant or deny a mistrial based on the presence or absence of manifest necessity is reviewed by this Court under an abuse of discretion standard. *State*

*v. Thornton*, 228 W.Va. 449, 459-60, 720 S.E.2d 572, 582-83 (2011); *State v. Lowery*, 222 W.Va. 284, 288, 664 S.E.2d 169, 173 (2008). *See West Virginia Rule of Criminal Procedure* 26.3 (addressing mistrial orders). This Court concludes Ms. Thomas's comment did not create a manifest necessity for a mistrial, and, consequently, the circuit court did not abuse its discretion in denying Lewis's motion.

We find this assignment of error without merit.

## C. The Attempted First Degree Murder Conviction

Lewis assigns as error the circuit court's denial of his motion for a judgment of acquittal regarding attempted first degree murder. Asserting that the evidence was insufficient to support the verdict, Lewis states that no testimony was offered from an expert to show that Ms. Thomas's injuries were life threatening. Moreover, Lewis asserts that the State failed to establish premeditation and deliberation, especially since Lewis transported Ms. Thomas to the VA hospital in Washington, D.C. *See State v. George*, 185 W.Va. 539, 543, 408 S.E.2d 291, 295 (1991) (Attempted murder "requires proof of premeditation or lying in wait along with a specific intent to kill and an overt act toward the commission of the crime[.]").

17

However, as Lewis acknowledges, this Court must view the evidence in the light most favorable to the prosecution. *See* syl. pt. 6, in part, *State v. Vilela*, *supra*, 238 W.Va. 11, 792 S.E.2d 22 (2016) (Upon motion for judgment of acquittal, evidence is viewed in the light most favorable to the prosecution.). *See also* syl. pt. 9, in part, *State v. Payne*, 225 W.Va. 602, 694 S.E.2d 935 (2010) (citing *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), for the principle that an appellate court must credit all inferences and credibility assessments, the jury might have drawn, in favor of the prosecution.).

The evidence of the State revealed that there was no justification or provocation by Ms. Thomas for the attack by Lewis on November 16, 2011. Malicious intent, premeditation and deliberation were shown through (1) Ms. Thomas's testimony that Lewis told her that he was going to kill her, (2) Lewis's use of two deadly weapons, *i.e.*, two butcher-length knives, and (3) the heinous and brutal nature of the attack. Given the time lapse of the attack, Lewis had ample opportunity to reflect upon what he was doing.

Ms. Thomas testified that she thought she was going to die during the attack. Her injuries were substantial and included a knife wound to her chest. *See* n. 2, *supra*. In denying Lewis's motion for a judgment of acquittal and/or a new trial, the circuit court observed that "with each passing moment that she was detained without medical treatment

18

her risk of bleeding to death increased substantially."  Ms. Thomas was hospitalized for several days and suffered partial loss of the use of her right hand.[8]

This Court concludes that the State's evidence at trial constituted a sufficient basis for the circuit court's refusal to dismiss the charge of attempted first degree murder.

### D. The Kidnaping Conviction and Sentence

Lewis contends that the circuit court committed error by failing to dismiss or set aside the kidnapping conviction.  Asserting that the kidnapping was incidental or intrinsic to the other charged offenses, Lewis bases this assignment of error on the sufficiency of the evidence.

The kidnapping statute in effect at the time of the attack on Ms. Thomas, and when the superceding indictment was returned, provided that kidnapping included the elements of receiving a "concession or advantage of any sort," or of "evading capture or arrest" after commission of the crimes.  That statute, *W.Va. Code*, 61-2-14a [1999], and the more recent 2012 version of the statute, have in common the element of the perpetrator obtaining a "concession."   Here, the verdict form set forth the following options concerning the

---

[8] The State's brief accurately notes that the jury had an opportunity to weigh the evidence, "including the evidence that Ms. Thomas eventually persuaded [Lewis] in taking her to the Washington, D.C., hospital for treatment of her wounds."

19

kidnapping charge: (1) guilty of kidnapping with no recommendation of mercy, (2) guilty of kidnapping with a recommendation of mercy, (3) guilty of unlawful restraint, and (4) not guilty. The jury found Lewis guilty of kidnapping with no recommendation of mercy.

Denying Lewis's motion for a judgment of acquittal and/or a new trial, the circuit court concluded "that there was ample evidence presented at trial to show that [Lewis] confined [Ms. Thomas] in the apartment for the purpose of evading capture or arrest after he attacked her." In that regard, Ms. Thomas testified that Lewis refused to take her to the VA hospital in Martinsburg because Ms. Thomas would "tell somebody." Moreover, the State's evidence suggested that Ms. Thomas persuaded Lewis to drive her to the VA hospital in Washington, D.C., on the basis that Lewis would be less likely to be recognized in the Washington, D.C. area.

Syllabus point 2 of *State v. Miller*, 175 W.Va. 616, 336 S.E.2d 910 (1985), holds:

> In interpreting and applying a generally worded kidnapping statute, such as W.Va. Code, 61-2-14a, in a situation where another offense was committed, some reasonable limitations on the broad scope of kidnapping must be developed. The general rule is that a kidnapping has not been committed when it is incidental to another crime. In deciding whether the acts that technically constitute kidnapping were incidental to another crime, courts examine the length of time the victim was held or moved, the distance the victim was forced to move, the location and environment of the place the victim was detained, and the exposure of the victim to an increased risk of harm.

20

*Accord* syl. pt. 14, *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989).

Here, the evidence of the State satisfied most, if not all, of the factors listed in *State v. Miller* to show that the kidnaping was not incidental or intrinsic to the other crimes. Ms. Thomas was detained in her apartment against her will and denied medical assistance for approximately seven hours, between shortly after midnight, until 7:35 a.m. later that morning when Lewis was in the process of driving Ms. Thomas to the VA hospital in Washington, D.C. Moreover, although Ms. Thomas was detained in her own apartment, the evidence indicates that the residence was relatively small, and Lewis was able to grab a second knife from the kitchen to continue stabbing Ms. Thomas. *See* n. 1, *supra.* Finally, as the circuit court stated "with each passing moment that [Ms. Thomas] was detained without medical treatment her risk of bleeding to death increased substantially." Upon those circumstances, this Court concludes that the evidence was sufficient to support the kidnaping verdict.[9]

---

[9] During the proceedings below, this Court's memorandum decision in *State v. Davis*, 2013 WL 1501435 (W.Va. April 12, 2013), was considered by the circuit court. *See* syl. pt. 5, in part, *State v. McKinley*, 234 W.Va. 143, 764 S.E.2d 303 (2014) (Memorandum decisions may be cited as legal authority and are legal precedent.). *See also In re: Involuntary Hospitalization of T.O.*, _ W.Va. _, _ S.E.2d _ (2017 WL 562828 - 2017). The *Davis* case is factually similar to the current matter, and it sheds light on the circuit court's determination to uphold Lewis's kidnaping conviction.

In *Davis*, the defendant repeatedly struck the victim, his former girlfriend, after he learned she was dating another man. The attack took place in the victim's trailer and lasted approximately one hour. The victim sustained lacerations and bruises. In *Davis*, the victim's seven year old daughter ran out of the trailer to seek help. The defendant prevented the victim from leaving the trailer despite her pleas to leave so she could find

21

Lewis further asserts that, in the event this Court affirms the kidnaping conviction, he should be sentenced under the reduced penalties set forth in *W.Va. Code*, 61-2-14a [1999]. Lewis argues that the detention of Ms. Thomas took place after her injuries were inflicted, and, soon after, he drove her to the VA hospital in Washington, D.C. Thus, Lewis argues that no harm was done during the actual kidnaping, and, consequently, he should be sentenced under the subsections of *W.Va. Code*, 61-2-14a [1999], which provide lesser penitentiary terms where the victim "is returned, or is permitted to return, alive, without bodily harm."

Lewis's assertion is unconvincing. While Lewis's detention of Ms. Thomas was not incidental or intrinsic to the other charges, the evidence before the jury was that he both detained her against her will and stabbed and beat her for a period of seven hours. Although Lewis could have taken Ms. Thomas to a local hospital, he refused to do so, further delaying medical assistance. Ms. Thomas's injuries were extensive, and some of them were

her daughter.

The defendant, in *Davis*, was convicted of malicious assault and kidnaping. On appeal, this Court affirmed the convictions, concluding that, "viewed in the light most favorable to the State, any rational juror could have found that the prosecution proved the elements of kidnaping, pursuant to West Virginia Code § 61-2-14a (1999), beyond a reasonable doubt." In addition, in *Davis* we rejected the defendant's argument that the circuit court committed error in failing to instruct the jury on the offense of unlawful restraint under *W.Va. Code*, 61-2-14g [2011]. No such instruction was offered by the defense; nor was plain error argued.

22

permanent in nature.  The jury returned a verdict of kidnapping with no recommendation of mercy.  The sentence of life without eligibility for parole was mandatory under *W.Va. Code*, 61-2-14a [1999].  The evidence does not warrant an exception.

## E. Alleged Cumulative Error

Lewis contends that he is entitled to a new trial because of the cumulative effect of other alleged errors, including (1) the denial of his motion to strike prospective juror Richard Thomas; (2) the admission of DNA blood evidence without a proper chain of custody; (3) the denial of a new trial based on newly discovered evidence; and (4) an improper comment by the circuit court.

First, Lewis assigns as error the denial of his motion to strike Richard Thomas from the jury panel for cause.  During voir dire, Richard Thomas, a correctional officer in the State of Maryland, stated that he worked with the husband of the Berkeley County Prosecuting Attorney.  He further stated that he had no interaction with law enforcement officers and that he would not assign more weight to, or give the benefit of doubt to, the testimony of law enforcement officers over other witnesses.  Finding no reason to strike Richard Thomas for cause, the circuit court denied Lewis's motion.  Lewis subsequently used a peremptory strike to remove him.

Syllabus point 3 of *O'Dell v. Miller*, 211 W.Va. 285, 565 S.E.2d 407 (2002), holds:

> When considering whether to excuse a prospective juror for cause, a trial court is required to consider the totality of the circumstances and grounds relating to a potential request to excuse a prospective juror, to make a full inquiry to examine those circumstances and to resolve any doubts in favor of excusing the juror.

*Accord* syl. pt. 5, *State v. Newcomb*, 223 W.Va. 843, 679 S.E.2d 675 (2009); syl. pt. 3, *State v. Hatley*, 223 W.Va. 747, 679 S.E.2d 579 (2009).

Lewis's counsel argued during voir dire that Richard Thomas "is almost analogous to a law enforcement officer, and I just think that, I don't want to say there's a preconceived notion of bias, but, you know, he's, I would deem him to be a law enforcement officer, Your Honor so I would move to strike for cause."

Upon review, this Court finds nothing in Richard Thomas's voir dire testimony, or in Lewis's reasons for the motion to strike, which would demonstrate reversible error in the circuit court's ruling. Accordingly, this assignment of error is without merit.

Second, Lewis assigns as error the denial of his motion to exclude DNA evidence which indicated that blood found on one of the butcher-length knives matched Ms. Thomas's blood. Trooper Conner seized the two knives found in Ms. Thomas's apartment, took a swab

24

of material appearing to be blood from one of the knives and sent the swab to the State Police Crime Laboratory. The material proved to be blood which matched a DNA sample taken from Ms. Thomas. Lewis contends that the testimony of Trooper Conner was insufficient to establish a proper chain of custody, *i.e.*, that the swab he submitted to the lab was actually from one of the knives in question.

Following Trooper Conner's trial testimony and the argument of counsel regarding the motion, the circuit court ruled that the chain of custody of the swab had been sufficiently established. Helpful to our review of that ruling is the general standard expressed in syllabus point 2 of *State v. Davis*, 164 W.Va. 783, 266 S.E.2d 909 (1980): "The preliminary issue of whether a sufficient chain of custody has been shown to permit the admission of physical evidence is for the trial court to resolve. Absent abuse of discretion, that decision will not be disturbed on appeal." *Accord* syl. pt. 3, *State v. Knuckles*, 196 W.Va. 416, 473 S.E.2d 131 (1996).

Here, there is no controversy with respect to the chain of custody of the swab itself as it passed from Trooper Conner to the State Police Crime Laboratory and then to Lewis's trial. The issue concerns the connection between the swab and the knives. The two butcher-length knives were described at trial as the knife in the living room and the knife from the kitchen. Trooper Conner specifically testified that he took the swab from the living room

25

knife because he observed more blood-like substance on that knife than on the other knife. He secured both knives and sent the swab to the lab. In any event, the DNA evidence before the jury indicated that Ms. Thomas's blood was on one of her own knives which was found in her own apartment. The DNA blood evidence did not connect Lewis to the knives. The chain of custody issue was a matter of weight, and we find no reversible error in the circuit court's discretion in denying the motion to exclude the evidence.

Third, Lewis asserts that the circuit court committed error by denying his supplemental motion for a new trial based on newly discovered evidence. The evidence consists of AT&T telephone records pertaining to one of two cell phones owned by Ms. Thomas at the time of the attack on November 16, 2011. Suggesting that Ms. Thomas placed a call during the attack, Lewis argues that the records establish Ms. Thomas's ability to communicate with others, thereby negating the kidnaping charge.

Lewis's argument was rejected by the circuit court in the order denying the supplemental motion:

> However, the Court finds that the new evidence is not material. The records do not show any telephone calls or text message activity during the 12:00 a.m. to 7:00 a.m. time period during which the attack occurred.
>
> Accordingly, the Court finds that these records have little, if any, evidentiary value and are thus not likely to produce an opposite result at a new trial.

26

For the reasons stated by the circuit court, we find this assignment of error without merit.  *See* syl. pt. 4, *State ex rel. Smith v. McBride*, 224 W.Va. 196, 681 S.E.2d 81 (2009) (addressing the requirements for granting a new trial based on newly-discovered evidence).

Fourth, Lewis asserts in a short paragraph in the petition before this Court that the circuit court committed plain error by making an improper comment to the jury.  Lewis's trial occurred over several days.  After the defense rested and before closing arguments, the circuit court stated: "Why don't we do this; it's 4:30 - - first of all, is there everybody [sic] who has to be home tonight before 7:00?  Is anybody whose spouse going to beat them up or anything?"  Lewis argues that the circuit court's comment favored the State and prejudiced the defense.  The comment, however, did not concern any material aspect of the case; nor did the comment address the weight of the evidence or express an opinion.  The evidence at trial was more than sufficient to support the verdicts reached by the jury, and no plain error has been shown.  Accordingly, this assignment of error is without merit.

## F. Potential Post-Conviction Habeas Proceedings

Lewis, an African-American, contends that he was denied a fair trial because of the failure of the circuit court to secure an appropriately diverse and representative jury panel. The panel included only one African-American, Deborah Burks.  During voir dire, Ms. Burks

indicated that she had been a victim in a domestic violence incident which would affect her ability to serve as a juror. The circuit court *sua sponte* removed her from the panel for cause.

Lewis objected on the ground that, other than Ms. Burks, no person of color was called to serve on the jury panel. He raised the issue again in his motion for judgment of acquittal and/or a new trial. The circuit court, however, denied relief. On appeal, Lewis contends that a random selection of prospective jurors in Berkeley County should have resulted in additional African-Americans on the panel. Among the cases cited by Lewis in support is *State v. Marrs*, 180 W.Va. 693, 379 S.E.2d 497 (1989), in which we stated in syllabus point 1: "It is a violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. *Constitution* for a member of a cognizable racial group to be tried on criminal charges by a jury from which members of his race have been purposely excluded." *Accord*, syl. pt. 2, *Davis v. McBride*, 221 W.Va. 240, 654 S.E.2d 364 (2007), *cert. denied*, 552 U.S. 1202 (2008) (habeas relief denied regarding first degree murder and malicious wounding convictions).

In addition to the make-up of the jury panel, Lewis contends that the prosecutor made an adverse racial comment during the proceedings which does not appear in the transcript. Lewis asserts that, in addition to transcripts, criminal trials in circuit courts should be audio and video recorded so that the proceedings can be accurately documented.

Nevertheless, as Lewis acknowledges, neither his contention concerning the prospective juror selection process in his case nor his contention regarding the prosecutor's comment were developed before the circuit court. Consequently, those issues are, more appropriately, potential subjects within the scope of a post-conviction habeas corpus proceeding. As Lewis states in the petition for appeal:

Defendant also reserves all grounds for state and federal post-conviction relief purposes, pertaining to his claims of racial discrimination prejudice resulting in a violation of his constitutional rights in this case, until such time that an appropriate and adequate record may be developed establishing said claims.

A similar result pertains to Lewis's final claim, superficially alleged, that his trial counsel was ineffective. As this Court confirmed in syllabus point 9 of *State v. Woodson*, 222 W.Va. 607, 671 S.E.2d 438 (2008), the issue of ineffective assistance of counsel should ordinarily be raised in a habeas corpus proceeding, where the record can be more fully developed, than on direct appeal. *Accord State v. McDaniel*, _ W.Va. _, 792 S.E.2d 72, 86 n. 13 (2016).

## V. Conclusion

Having found the assignments of error to be without merit, this Court affirms Lewis's convictions and the sentencing order entered by the Circuit Court of Berkeley County on August 25, 2015.

Affirmed.