**MISSOURI DEPARTMENT OF HEALTH AND SENIOR SERVICES, Petitioner-Appellant,**

v.

**Kellie DICKSON, d/b/a Lit'l Bits, Respondent-Respondent.**

## No. SD 34454

Missouri Court of Appeals,
Southern District,
Division Two.

Filed: June 20, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied July 13, 2017

Motion for Transfer to Supreme Court Denied October 5, 2017

Appellant's Attorneys: Chris Koster, Attorney General, and Mary Long, Assistant Attorney General, of Jefferson City, Missouri; and Ronald Q. Smith, Assistant Attorney General, of Springfield, Missouri.

Respondent's Attorneys: John A. Lewright, of Cassville, Missouri.

Intervenor's Attorney: Amy L. Boxx, Barry County Prosecutor, of Monett, Missouri.

WILLIAM W. FRANCIS, JR., J.

The Missouri Department of Health and Senior Services ("DHSS") appeals the trial court's "First Amended Judgment, Order and Injunction" in litigation, hereafter de-

scribed, involving Kellie Dickson, d/b/a Lit'l Bits ("Dickson"). In two points on appeal, DHSS asserts that: (1) the trial court erroneously applied the law in granting the Barry County prosecutor's request to intervene and denying DHSS's petition for injunction; and (2) the trial court erroneously applied the law in finding that DHSS does not have the authority to promulgate and enforce certain rules and regulations relating to the licensure applicants seeking to operate child care facilities. Because we find that the DHSS does not appeal from a final judgment, we dismiss its appeal.

### Facts and Procedural History

Dickson is in the business of operating an, unlicensed childcare facility.[1] For the last 36 years, she operated childcare facilities without a license. For the last 22 years, she operated an unlicensed childcare facility called "Lit'l Bits" in Barry County.

The record indicates that in all the years Dickson operated her unlicensed childcare facilities, local authorities had never compelled Dickson to obtain a license, or to comply with regulatory or statutory requirements for Missouri childcare facilities. From 2008 to 2013, there were a number of complaints filed with DHSS about Lit'l Bits.

DHSS, from March 2011 to February 2013, conducted multiple on-site visits as part of its investigation into the complaints. Dickson repeatedly told DHSS investigators that she knew she was breaking the law by operating without licensure, but that she refused to apply for a license.

Between April 1, 2011 and March 1, 2013, DHSS notified the Barry County

prosecuting attorney—on seven different occasions—that Dickson was operating an unlicensed daycare. The Barry County prosecutor failed to act.

On April 22, 2013, the Missouri Attorney General, on behalf of DHSS, filed a "Petition for Injunctive Relief" seeking a preliminary and permanent injunction enjoining Dickson from operating an unlicensed daycare until such time as Dickson substantially complied with sections 210.201 to 210.245.

On October 9, 2013, DHSS waived its request for a preliminary injunction, and the matter was set for a bench trial on February 19, 2014. On December 11, 2013, the Barry County prosecutor filed a "Motion to Intervene," pursuant to section 210.245.5, and DHSS filed a motion to dismiss that motion. On January 15, 2014, based on an agreement between the prosecutor and Dickson, the trial court granted Dickson blanket immunity from criminal prosecution for any violations of sections 210.201 to 210.245, with the corresponding agreement that Dickson answer questions under oath during discovery conducted by DHSS.

On January 27, 2014, the Barry County prosecutor filed a "Petition for Oversight Relief." On February 18, 2014, the trial court overruled DHSS's motion to dismiss, and granted the prosecutor's motion to intervene. On December 22, 2014, the DHSS filed a "Motion for Summary Judgment," which included a statement of uncontroverted facts. Dickson filed a timely response.

On February 17, 2015, the trial court denied DHSS's motion for summary judgment, ordered Dickson to apply for a li-

---

1. We use "child-care facility" and "daycare" interchangeably in this opinion. "Child-care facility" is a term of art defined by section 210.201(2).

All references to statutes are to RSMo 2000, unless otherwise indicated.

cense, and ordered DHSS to either grant a license to Dickson, or set forth with specificity its reasons for denying the license. Dickson complied with the trial court's order and applied for a license, but DHSS denied her application after DHSS conducted a sanitation inspection on March 12, 2015, finding 12 violations; conducted inspections on March 12, 2015 and March 16, 2015, finding a total of 75 violations; and a fire safety inspection on March 17, 2015, finding 22 violations.

The parties attempted to reach a solution by agreement, which was unsuccessful. A bench trial was scheduled for December 15, 2015. On December 14, 2015, the Barry County prosecutor[2] charged Dickson with an infraction for operating a daycare without a license.

After evidence was adduced and the cause heard on December 15, 2015, the record was left open for the parties to file post-trial briefs on the legal issues of whether or not a section 210.245.5 oversight order should be in the form of an injunction, and which of the regulatory requirements/violations were essential to accomplish the legislative purposes for licensing daycare operations.

On April 18, 2016, the trial court entered its "First Amended Judgment, Order and Injunction." The judgment contained extensive findings of facts and conclusions of law. The trial court denied DHSS's petition for injunction enjoining Dickson from engaging in the operation of a childcare facility until her facility was in substantial compliance with sections 210.201 to 210.245; granted the prosecutor's petition to oversee the operation of the daycare; ordered Dickson to comply with the trial court's order until the trial court determined that Dickson was in "substantial compliance" with the Child Care Act; and ordered Dickson to comply with 16 specific requirements by July 1, 2016,[3] and further ordered:

---

**2.** We note that this was a new prosecutor.

**3.** 1. The flooring in the infant/toddler room must be tile, linoleum or wood. Carpet (except for an area rug laundered daily), cannot be used as flooring. 19 CSR 30-62.082(2)(B)2.B.(VI).

2. The diaper changing tables must have a water proof [sic] washable surface. A quilted diapering pad that is not waterproof cannot be used. 19 CSR 30-62.082(4)(A).

3. All adults who presently work at the facility, whether for pay or as a volunteer, must have a medical examination report on file at the facility and all future adults who may work at the facility must have a medical examination report on file within 30 days after beginning work. 19 CSR 30-62.122(1)(A).

4. Risk Assessment Reports for TB must be on file for every adult at the facility. 19 CSR 30-62.122(1)(B).

5. Medical Examination Reports for all of the infants, toddlers, and pre-school children must be obtained within 30 days of admission and kept on file at the facility. 19 CSR 30-62.182(4)(A).

6. Immunization Records showing satisfactory evidence of required immunizations must be obtained and kept on file for each child. 19 CSR 30-62.192(4)(A).

7. An emergency door exit leading to outside stairs from the loft area in the facility to the ground must be installed. 19 CSR 30-62.087(4)(A).

8. An emergency door exit in the infant/toddler room leading directly outside the facility with a ramp for evacuation must be installed. 19 CSR 30-62.087(6).

9. With respect to all of the remaining deficiencies identified by the fire inspector, Ms. Dickson must either comply with all of the other requirements described in the fire inspector's part of Ex. 4 (the first 7 pages), or submit a written request to the court for a variance for each requirement accompanied with a written opinion from a local fire authority that based on all relevant factors, including but not limited to the physical characteristics of Ms. Dickson's facility, Ms. Dickson's request for a variance if granted, will not endanger the health or safety of the children.

The failure to comply with these orders by July 1, 2016 or to request additional time to comply may result in an order enjoining the operation of the daycare or a judgment of civil contempt which may be punishable by incarceration or a fine or both until Ms. Dickson complies with the orders contained herein.

As soon as all of the orders set forth above are accomplished, or if it becomes apparent that Ms. Dickson either cannot or will not comply with the terms of this order, the Court will schedule a hearing to determine if Ms. Dickson is in *"substantial compliance"* or if this injunction should be modified and additional orders rendered.

DHSS shall remain joined to this action as a necessary party until further order of the Court. A copy of DHSS Ex. 3 and Ex. 4 shall be attached hereto. The Court reserves for future ruling the issue of whether or not DHSS can be ordered by this Court to license Ms. Dickson on a finding of *"substantial compliance"* by the Court or if Ms.

Dickson should be ordered to apply for a license through DHSS and go through the regulatory licensing process to include the requesting of variances and pursuit of her administrative remedies subject to judicial review by either this court or another court.

Before the July 1, 2016 date for Dickson to complete the court-ordered requirements, and before any of the follow-up actions, proceedings, and future determinations outlined above by the trial court, DHSS filed this appeal, asserting two points:

I. The trial court erred in denying the [DHSS's] request for an injunction and granting the prosecutor's request for oversight of Dickson's facility because the court's order erroneously declares the law and erroneously applies the law in that:

a. The prosecutor's statutory right to intervene is limited and the prosecutor failed to timely exercise that right; and

10. Ms. Dickson will add 1 additional adult to her staff so that at least 1 adult will be present in the infant/toddler room at all times whenever that room is occupied by an infant or toddler. 19 CSR 30-62.182(1)(D)1.

11. Ms. Dickson will request an inspection from the local county health inspector and submit a copy of that inspection to the court. The inspection must identify any deficiencies under the applicable local health code regarding food service and sanitation practices at her facility, if any, that the local inspector believes must be corrected so as to not endanger the health or safety of the children. 19 CSR 30-62.042(3)(D)12 and 19 CSR 30-62.042(*l*)(B).

12. Ms. Dickson will cease administering corporal punishment and will not permit any adult at her facility to administer corporal punishment unless she obtains a written request from the parent of a child to do so at her discretion. A copy of that request must be placed in the child's records. 19 CSR 30-62.182(1)(C)7.

13. Ms. Dickson must make sure there is sufficient resilient material under the playground equipment to minimize injuries to children from falling. 19 CSR 30-62.082(6)(A).

14. Emergency phone numbers shall be posted by the telephones. 19 CSR 62.082(2)(A)11[.]

15. Ms. Dickson shall maintain a record for each child that includes contact information, any major health problems, emergency contact information, the child's immunization record, and a medical exam. 19 CSR 62.222(2)(B).

16. Ms. Dickson and every adult in her facility, whether paid or volunteer, must undergo a criminal record check and a child abuse/neglect screening. A copy of the results will be kept by Ms. Dickson. All future staff must have a background check and a child/abuse screening before they start working in the facility. 19 CSR 30-62.042(3)(L) and 19 CSR 30-62.042(3)(K).

b. The prosecutor has no interest that establishes a right to intervene beyond that granted by statute.

II. The trial court erred in holding that the [DHSS] does not have the authority to promulgate and enforce rules establishing qualifications for applicants for licensure because the court's finding erroneously declares the law and erroneously applies the law in that it is contrary to the plain language of Section 210.221, RSMo.

■ Before we can proceed to the merits of this appeal, we must discern whether DHSS appeals from a final judgment. "A prerequisite to appellate review is that there be a final judgment." *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997) (internal quotation and citation omitted). "An appealable judgment resolves all issues in a case, leaving nothing for future determination." *Id.* "Temporary orders, which by their nature expire and are superseded by a subsequent judgment on the merits, generally are not subject to review, either by interlocutory appeal or couched in an appeal of the final judgment[.]" *In re Marriage of Erickson*, 419 S.W.3d 836, 847 (Mo.App. S.D. 2013) (internal quotation and citation omitted). Where a "court's decision, however designated, is subject to revision at any time before all claims are adjudicated[,]" there is no final judgment. *Modern Motors, L.L.C., v. Gerber*, 505 S.W.3d 302, 305 (Mo.App. W.D. 2016).

■ During oral argument, counsel for DHSS admitted that the decision of the trial court was not in the nature of a permanent injunction, but was rather subject to further evidence and further decision making by the trial court. The trial court's decision, though designated as a judgment, contemplates subsequent evidence to be heard, and subsequent adjudication on the merits. Notably, the trial court granted the Barry County prosecutor's request for an order "overseeing the operation of the daycare and requiring . . . Dickson to comply with the Court's orders until the Court determines . . . Dickson is in '*substantial compliance*' with the purposes of the Child Care act[.]"

The judgment ordered sixteen specific compliance actions to be completed by Dickson no later than July 1, 2016—after the date the judgment was entered—making changes to her facility and policies. The judgment then contemplated a further hearing

[a]s soon as all of the orders set forth above are accomplished, or if it becomes apparent that . . . Dickson either cannot or will not comply with the terms of this order, the Court will schedule a hearing to determine if . . . Dickson is in '*substantial compliance*' or if this injunction should be modified and additional orders rendered.

The trial court also reserved for determination whether DHSS could be ordered to give Dickson a license, or whether Dickson would be forced to go through the regulatory licensing process.

■ This is not a case that "leav[es] nothing for future determination[,]" *Gibson*, 952 S.W.2d at 244, and as a result, it is not final for purposes of appeal. The trial court has not resolved "all issues in [the] case," which is required for an appealable final judgment. *First National Bank of Dieterich v. Pointe Royale Property Owners' Association, Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017) (internal quotation and citation omitted). "[A]ny judgment that resolves only part of a claim, or that resolves some of the claims pending in a lawsuit but leaves others unresolved, generally is not a 'final judgment'. . . ." *Id.* As our Western District has said, and with exceptions not relevant

here, "our jurisdiction depends upon the existence of a final judgment." *City of Kansas City v. Ross*, 508 S.W.3d 189, 192 (Mo.App. W.D. 2017) (internal quotation and citation omitted). In the absence of a final appealable judgment, this Court must dismiss the appeal. *See*, *Modern Motors*, 505 S.W.3d at 305. DHSS's appeal is dismissed.

NANCY STEFFEN RAHMEYER, J.—Concurs

DANIEL E. SCOTT, J.—Concurs