Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/09/2025 09:09 AM CDT

VICTORIA A. CZECH, PERSONAL REPRESENTATIVE OF
THE ESTATE OF BRETT ALLEN TORRES, APPELLEE,
v. KEITH L. ALLEN, APPELLANT.

___ N.W.3d ___

Filed May 9, 2025.    Nos. S-23-1037, S-24-047.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.

2. **Venue: Appeal and Error.** Where the record does not show an abuse of discretion, a ruling on a motion to transfer venue will not be disturbed on appeal.

3. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

4. **Summary Judgment: Appeal and Error.** An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

5. ____: ____. An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

6. **Appeal and Error.** The grant or denial of a stay of proceedings is reviewed for an abuse of discretion.

7. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

8. **Final Orders.** Final orders are defined in Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2024), which currently recognizes four categories of final orders; some categories pertain to actions, and one pertains to special proceedings.

9. **Venue: Actions.** Pursuant to Neb. Rev. Stat. § 25-410 (Cum. Supp. 2024), any civil action may be transferred to the district court of any county in the state for the convenience of the parties and witnesses or in the interest of justice.

10. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

11. **Pretrial Procedure: Pleadings: Evidence: Juries: Appeal and Error.** A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. Therefore, when a court overrules a motion in limine to exclude particular evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court.

12. **Summary Judgment: Records: Appeal and Error.** Affidavits, depositions, and other evidence considered at a hearing on a motion for summary judgment must be preserved in a bill of exceptions filed in the court before an order on such a motion may be reviewed.

13. **Records: Appeal and Error.** It is incumbent on the party appealing to present a record that supports the errors assigned; absent such a record, as a general rule, the decision of the lower court as to those errors will be affirmed.

14. **Moot Question.** Mootness refers to events occurring after the filing of a suit that eradicates the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.

15. ____. The central question in a mootness analysis is whether changes in circumstances have forestalled any occasion for meaningful relief.

16. **Moot Question: Jurisdiction: Appeal and Error.** Although mootness does not prevent appellate jurisdiction, it is a justiciability doctrine that can prevent courts from exercising jurisdiction.

17. **Judgments: Jurisdiction: Final Orders: Appeal and Error.** An appeal is not perfected and an appellate court acquires no jurisdiction unless the appellant has satisfied the statutory requirements for appellate jurisdiction by appealing from a final order or a judgment.

Appeals from the District Court for Lincoln County: Cindy R. Volkmer, Judge. Appeal in No. S-23-1037 dismissed. Judgment in No. S-24-047 affirmed.

Keith L. Allen, pro se.

Brock D. Wurl, of Paloucek, Herman & Wurl Law Offices, for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Funke, C.J.

## INTRODUCTION

These consolidated appeals challenge orders issued by the district court for Lincoln County, Nebraska, in a wrongful death suit brought against Keith L. Allen by Victoria A. Czech, the personal representative of the estate of Brett Allen Torres. The first appeal, docketed as case No. S-23-1037, was filed during the trial. The second appeal, docketed as case No. S-24-047, challenges, in part, the same orders as the first appeal but was filed after a judgment in Czech's favor. Because the orders challenged in case No. S-23-1037 are not final orders, we dismiss the appeal for lack of jurisdiction. As to case No. S-24-047, finding no merit to Allen's arguments, we affirm the orders of the district court.

## BACKGROUND

### Initial Filings

After Allen shot and killed Torres in May 2020, he was prosecuted and convicted of first degree murder and use of a firearm to commit a felony.[1]

Separate and apart from the criminal charges, Czech sued Allen for wrongful death and conscious suffering in Torres' death. Czech also sought an order of prejudgment attachment upon Allen's assets based on information and belief that he "may attempt to conceal, hide, convert, or remove" from Lincoln County assets that could be used to satisfy a future judgment in the case. The district court granted Czech's motion and ordered prejudgment attachment.

---

[1] See *State v. Allen*, 314 Neb. 663, 992 N.W.2d 712 (2023), *modified on denial of rehearing* 315 Neb. 255, 995 N.W.2d 446, *cert. denied* ___ U.S. ____, 144 S. Ct. 1070, 218 L. Ed. 2d 248 (2024).

Allen, proceeding pro se, filed an answer generally denying the substance of Czech's claims and alleging affirmative defenses, including that he acted in defense of himself and others. In his answer, Allen did not request a jury trial. However, over 2 years after filing his answer, Allen sought and was granted a jury trial.

The district court set a deadline of March 31, 2023, for all "pretrial motions," except motions for summary judgment.

### MOTION FOR CHANGE OF VENUE AND MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ALLEN'S CONVICTIONS

On April 11, 2023, Allen moved for change of venue, claiming that a fair and impartial jury could not be impaneled in Lincoln County due to the publicity surrounding the "criminal charges" against him in Torres' death. That same day, Allen also filed a motion in limine to exclude "documents, statements, and/or other information or evidence" relating to his convictions in Torres' death. Allen argued that such evidence was inadmissible under Neb. Rev. Stat. § 27-609(5) (Reissue 2016), because he had appealed his convictions and, as such, that the convictions were not final. Allen also argued that evidence of his convictions should be excluded under Neb. Rev. Stat. § 27-403 (Reissue 2016), because it had "no impeachment value" and would be unduly prejudicial to him, confuse or mislead the jury, and cause undue delay.

The district court initially overruled both motions because they were untimely. However, upon Allen's motion for reconsideration, the court overruled his motion for change of venue because it was not "appropriate" to request a jury trial and then seek change of venue, "especially given the late nature of the request for the jury trial." Also, upon reconsideration, the court overruled Allen's motion in limine on the ground that it was moot. The court reasoned that when Allen filed his motion in limine, his convictions were on appeal, but that they had subsequently been affirmed by the Nebraska Supreme Court.[2]

---

[2] See *Allen, supra* note 1.

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Czech then filed a motion for partial summary judgment as to Allen's liability for Torres' death. At the hearing on that motion, Czech argued that Allen's conviction for first degree murder supported a finding that he was liable because it involved the "same set of facts" that led to the civil action, but the burden of proof is "much lower" in the civil action. Allen did not make any substantive response to Czech's motion at the hearing, beyond noting that he was "actively trying to appeal" and "working on" postconviction relief. Exhibit 6, which contained Allen's written response to Czech's motion, is not part of the record on appeal.

After the hearing, the district court sustained Czech's motion for partial summary judgment. The court noted that Czech had offered evidence of Allen's convictions, as well as "evidence of the alleged crime" and "trial testimony" from several witnesses. According to the court, that evidence "show[ed] that there is no material issue of fact regarding the fact that Allen killed Torres." The court also noted that although Allen had previously argued that § 27-609(5) "prevent[s] summary judgment[,] . . . he did not make this argument as it directly relates" to the motion for partial summary judgment. Nonetheless, the court stated that it "wanted to be clear" that § 27-609(5) "became inapplicable" once the Nebraska Supreme Court affirmed Allen's convictions.

## OBJECTION AND MOTION TO VACATE
## ORDER OF PREJUDGMENT ATTACHMENT AND
## MOTION TO DISCHARGE ATTACHMENT

Allen then objected and moved to vacate the order granting Czech's motion for prejudgment attachment. In that filing, Allen claimed that he was not aware of Czech's motion or the court's order until the order was received into evidence in *State v. Allen*[3] in conjunction with his motion for return of seized property. As such, Allen claimed his due process rights were violated.

---

[3] See *State v. Allen, ante* p. 627, 17 N.W.3d 794 (2025).

The district court overruled Allen's objection because it found that both Czech's motion and the order of prejudgment attachment were "sent" to him. The court also concluded that there was no violation of Allen's due process rights because the statute authorizing prejudgment attachment did not require a hearing prior to the issuance of an order of prejudgment attachment.

Allen subsequently moved to discharge attachment, claiming "lack of service of process" and that Czech "lack[ed] standing" to seek prejudgment attachment under Nebraska law.

### Motion to Stay Proceedings, Jury Selection, Motion for Writ of Habeas Corpus ad Testificandum, and Appeal in Case No. S-23-1037

A jury trial was held on December 19, 2023. Early that day, Allen asked the court to stay the proceedings because he had filed an appeal challenging the overruling of his pretrial motions and his objection and motion to vacate the order of prejudgment attachment, as well as the court's failure to rule on his motion to discharge attachment. Allen also argued that evidence of his convictions was inadmissible because he had "appeal[ed]" those convictions to the U.S. Supreme Court.

The district court declined to stay the proceedings. The court checked the record and observed that no notice of appeal had been filed with the clerk's office. The court also opined that all the orders issued to date had been interlocutory orders and not final, appealable orders.

The court then stated that Allen's motion to discharge attachment was untimely. The court then moved forward with jury selection.

During voir dire, one prospective juror identified himself as a police dispatcher. When asked whether his work as a police dispatcher would affect his ability to be a fair and impartial juror, he said he "was on duty" the day Torres was shot, and he questioned why Allen did not appear to be in jail. He also said he was not sure he would be able to "set

aside" his prior knowledge and "make a decision" based on the evidence presented in court. Upon the court's motion, that prospective juror was stricken for cause.

Another prospective juror said that he knew Torres and that he felt like he "can be partial." However, questioning by the court revealed that the prospective juror had confused the terms "partial" and "impartial." The prospective juror then agreed that his knowledge of Torres would be "set aside" and would "not affect [his] decision." Allen did not move to strike that prospective juror, who was ultimately selected to serve on the jury.

Later that day, the court said that while the morning session of trial was ongoing, it had received several filings by Allen. Among those filings were the notice of appeal in case No. S-23-1037 and a motion for writ of habeas corpus ad testificandum. However, the court did not view the appeal as divesting it of jurisdiction, and it proceeded with other matters.

Those matters included arguments on Allen's motion for writ of habeas corpus ad testificandum. Allen sought to have a witness, who was imprisoned, be produced for trial or be able to testify by video conferencing. Allen argued that the witness was present when he shot Torres and could "shed some light" on matters. Czech countered that the motion was untimely. Czech also argued that the witness' testimony would not be relevant because all that remained to be determined at trial was damages, and there was no indication the witness could testify to that. The court overruled Allen's motion.

### Jury Verdict, Appeal in Case No. S-24-047, and Consolidation With Case No. S-23-1037

The parties presented testimony and other evidence. At the close of evidence, the matter was submitted to the jury. The jury returned a verdict of $130,000 for Czech and against Allen.

Allen then filed the notice of appeal in case No. S-24-047. The Nebraska Court of Appeals ordered both of Allen's

appeals to be consolidated for briefing and further disposition, and we moved the matter to our docket.[4]

## ASSIGNMENTS OF ERROR

In his brief on the consolidated appeals, Allen assigns, restated and reordered, that the district court erred in (1) denying his motion for change of venue, (2) denying his motion in limine to exclude evidence of his convictions, (3) granting Czech's motion for partial summary judgment, (4) denying his objection and motion to vacate the order of prejudgment attachment and his motion to discharge attachment, (5) denying his motion for writ of habeas corpus ad testificandum, and (6) denying his motion to stay proceedings, pending the appeal in case No. S-23-1037.

## STANDARD OF REVIEW

[1] A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law.[5]

[2,3] Where the record does not show an abuse of discretion, a ruling on a motion to transfer venue will not be disturbed on appeal.[6] A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[7]

[4,5] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[8] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences

---

[4] Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

[5] *In re Hessler Living Trust*, 316 Neb. 600, 5 N.W.3d 723 (2024).

[6] *Id.*

[7] *State v. Haas*, 317 Neb. 919, 12 N.W.3d 787 (2024).

[8] *Main St Properties v. City of Bellevue, ante* p. 116, 13 N.W.3d 911 (2024).

that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[9]

[6] The grant or denial of a stay of proceedings is also reviewed for an abuse of discretion.[10]

## ANALYSIS

### Lack of Jurisdiction Over Case No. S-23-1037, But Not Over Case No. S-24-047

[7] We begin with the question of whether we have jurisdiction over Allen's appeals. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[11]

In determining whether we have jurisdiction, we look to Neb. Rev. Stat. §§ 25-1911 (Reissue 2016) and 25-1912 (Cum. Supp. 2024).[12] Together, those statutes generally prescribe that for an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a judgment or decree rendered or from a final order.[13]

When Allen filed his appeal in case No. S-23-1037, no judgment had yet been rendered against him in the wrongful death suit.[14] Instead, Allen challenged the court orders

---

[9] *Id.*

[10] *Great Plains Livestock v. Midwest Ins. Exch.*, 312 Neb. 367, 979 N.W.2d 113 (2022).

[11] *In re Estate of Weeder, ante* p. 393, 16 N.W.3d 137 (2025).

[12] See, e.g., *D&M Roofing & Siding v. Distribution, Inc.*, 316 Neb. 952, 7 N.W.3d 868 (2024); *Johnson v. Vosberg*, 316 Neb. 658, 6 N.W.3d 216 (2024).

[13] But see Neb. Rev. Stat. § 25-1315 (Reissue 2016) (when more than one claim for relief is presented in action, or when multiple parties are involved, court may direct entry of final judgment as to one or more but fewer than all of claims or parties under specified circumstances).

[14] Cf. *D&M Roofing & Siding, supra* note 12 ("judgment" is court's final consideration and determination of parties' respective rights and obligations as they presently exist upon matters submitted to court and must dispose of case fully and leave nothing for further determination, except compliance with its terms).

overruling his pretrial motions and his objection and motion to vacate the order of prejudgment attachment. Allen also challenged the court's refusal to address his motion to discharge attachment, which, for present purposes, we treat as a denial of that motion. As a result, our jurisdiction over the appeal in case No. S-23-1037 depends on whether the orders from which Allen appeals constitute "final orders." We find that they do not.

[8] Final orders are defined in Neb. Rev. Stat. § 25-1902(1) (Cum. Supp. 2024), which currently recognizes four categories of final orders; some categories pertain to actions, and one pertains to special proceedings.[15] Those categories in § 25-1902(1) include:

> (a) An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment;
> (b) An order affecting a substantial right made during a special proceeding;
> (c) An order affecting a substantial right made on summary application in an action after a judgment is entered; and
> (d) An order denying a motion for summary judgment when such motion is based on the assertion of sovereign immunity or the immunity of a government official.

The orders at issue in case No. S-23-1037 do not fall within any of the aforementioned categories. They do not, in effect, determine the action or prevent a judgment, per § 25-1902(1)(a).[16] Neither do they affect the subject matter of the litigation in a special proceeding, such that a right cannot be effectively vindicated in an appeal from a final judgment,

---

[15] *Johnson, supra* note 12.

[16] Cf. *Wilson v. Shepherd*, 15 Neb. 15, 16 N.W. 826 (1883) (order discharging attachment is final order because attached property is released and plaintiff may thereby be deprived of substantial right; however, where court overrules motion, order is not final and is still subject to review by court up to time of rendering final judgment).

per § 25-1902(1)(b).[17] Nor were the orders made on a summary application after a judgment or on a motion for summary judgment based on the assertion of sovereign immunity or the immunity of a government official, per § 25-1902(1)(c) and (d). As such, we lack jurisdiction over case No. S-23-1037.

Case No. S-24-047 is another matter. That appeal challenges, in part, the same orders at issue in case No. S-23-1037. But in case No. S-24-047, the jury returned a verdict of $130,000 for Czech and against Allen. Allen then appealed, and the district court entered judgment in favor of Czech.[18] Therefore, we have jurisdiction over case No. S-24-047, and we turn to the merits of the claims Allen raises in that appeal.

## No Abuse of Discretion in Overruling Allen's Motion for Change of Venue

In his first assignment of error, Allen argues that the district court abused its discretion in denying his motion for change of venue. Allen points to pretrial publicity regarding his prosecution for Torres' murder and claims that the pretrial publicity made it "impossible" for a fair and impartial jury to be impaneled in Lincoln County.[19] Allen also argues that pretrial publicity "create[s] a presumption of prejudice," such that we disbelieve jurors' claims that they can be fair and impartial.[20] In addition, Allen points to statements by two prospective jurors that he claims "taint[ed]" the jury or otherwise "presented plain error."[21] Czech counters that Allen

---

[17] See, e.g., *In re Hessler Living Trust, supra* note 5.

[18] See § 25-1912(2) ("[a] notice of appeal or docket fee filed or deposited after the announcement of a decision or final order but before the entry of the judgment, decree, or final order shall be treated as filed or deposited after the entry of the judgment, decree, or final order and on the date of entry"); *In re Change of Name of Whilde*, 298 Neb. 510, 904 N.W.2d 707 (2017).

[19] Brief for appellant at 17.

[20] *Id.*

[21] *Id.* at 18.

failed to meet the burden of showing that pretrial publicity made it impossible to secure a fair trial and an impartial jury in Lincoln County.

[9] Pursuant to Neb. Rev. Stat. § 25-410 (Cum. Supp. 2024), any civil action may be transferred to the district court of any county in the state "[f]or the convenience of the parties and witnesses or in the interest of justice."[22] We understand Allen's arguments to implicate the interest of justice. However, we see nothing in the record on appeal to suggest that the district court abused its discretion in denying Allen's motion for change of venue.

Both parties rely on criminal cases regarding what a defendant must do to establish that local conditions and pretrial publicity make it impossible to secure a fair and impartial jury, such that the trial court can be seen to have abused its discretion in denying a motion for change of venue.[23] Assuming without deciding that the same standard applies in a civil case,[24] we agree with Czech that Allen failed to meet his burden here.

In his pretrial motion for change of venue, Allen alleged that newspapers in North Platte, Nebraska, had published "numerous" articles about the criminal charges against him in Torres' death. Allen also alleged that radio stations broadcasted "many" reports about those charges and that the population of North Platte was 25,000. However, as we have previously explained, "mere jury exposure to news accounts of a crime does not presumptively deprive a criminal defendant of due

---

[22] See, e.g., *Community First State Bank v. Olsen*, 255 Neb. 617, 587 N.W.2d 364 (1998).

[23] See, *Irvin v. Dowd*, 366 U.S. 717, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961); *State v. Rodriguez*, 272 Neb. 930, 726 N.W.2d 157 (2007). Cf., *Bittner v. Miller*, 226 Neb. 206, 410 N.W.2d 478 (1987) (discussing motion for change of venue in civil case); *Regier v. Nebraska P. P. Dist.*, 189 Neb. 56, 199 N.W.2d 742 (1972) (same).

[24] See, e.g., *Skaggs v. Otis Elevator Co.*, 164 F.3d 511 (10th Cir. 1998) (comparing constitutional bases for right to impartial jury in civil cases and in criminal cases).

process."[25] Instead, the defendant must show the existence of "pervasive misleading pretrial publicity."[26] We see no such evidence here.

Allen did not provide any evidence regarding the substance of the newspaper and radio coverage,[27] the pervasiveness of the coverage,[28] or the degree to which prospective jurors recalled that coverage, given that approximately 18 months had passed between his criminal trial and his motion for change of venue.[29] All that Allen offered at the hearing on his motion for change of venue was a vague argument that

> [c]hange of venue might be appropriate in this matter because of any rumors or . . . false speakings that's been had since . . . the start of all this.
>
> It's a small town, everybody knows pretty much everybody around there, and I think that it would be . . . better tried somewhere where people are less knowledgeable about the case.
>
> . . . .
>
> . . . [T]here's a lot of influence of the . . . family there, of [Torres] and . . . friendships with them, and I thought moving . . . the trial to somewhere further away would be more fair.

---

[25] *Rodriguez, supra* note 23, 272 Neb. at 940, 726 N.W.2d at 169.

[26] *Id*.

[27] Cf. *Irvin, supra* note 23, 366 U.S. at 725 (defendant attached 46 exhibits to his motion for change of venue, illustrating "barrage of newspaper headlines, articles, cartoons and pictures . . . unleashed" against him).

[28] Cf. *id*. (defendant's motion for change of venue alleged that newspapers in which stories appeared were "delivered regularly" to 95 percent of dwellings in county and that similar stories appeared on radio and television stations that were equally pervasive in county).

[29] See, e.g., *id*. (defendant complaining of publicity 6 to 7 months prior to trial); *Rodriguez, supra* note 23 (length of time between dissemination of publicity complained of and date of trial is one factor that trial court must consider in determining whether defendant met burden of showing that pretrial publicity made it impossible to secure fair trial and impartial jury).

On appeal, Allen does not point to any evidence of pretrial publicity, except perhaps statements by two prospective jurors indicating that they might not be able to be impartial. However, we do not view those statements to reflect pretrial publicity. Instead, one statement reflected prior knowledge of the shooting obtained from the prospective juror's work as a police dispatcher. That prospective juror was stricken for cause on the court's motion. The other statement reflected the juror's personal knowledge of Torres. Moreover, once the court clarified the meanings of the terms "impartial" and "partial," that juror agreed his personal knowledge of Torres would be "set aside" and would "not affect [his] decision." We also observe that Allen's sole motion for change of venue had been overruled before the statements were made and that Allen did not subsequently file another motion for change of venue.[30]

In sum, Allen's failure to produce any evidence of the alleged pretrial publicity, rumors, or "false speakings" is fatal to his claim that a fair and impartial jury could not be impaneled in Lincoln County. It is also fatal to his claim that under *Irvin v. Dowd*,[31] we should presume prejudice on the part of all the prospective or impaneled jurors in his case who said they could be fair and impartial. It is true that in *Irvin*, the U.S. Supreme Court found that the defendant had been denied a fair trial by an impartial jury, even though each of the prospective jurors whom the presiding judge personally examined after the defendant ran out of peremptory challenges said "he could render an impartial verdict."[32] However, the defendant in *Irvin* produced evidence of the nature and

---

[30] Cf. *Irvin, supra* note 23 (after defendant's second motion for change of venue was overruled, defendant filed two additional motions for change of venue during jury selection). See, also, *Lefferts v. Bell*, 57 Neb. 248, 77 N.W. 680 (1898) (court's own motion cannot transfer case for trial to another county).

[31] *Irvin, supra* note 23.

[32] *Id.*, 366 U.S. at 724.

extent of the pretrial publicity regarding him.[33] Allen did not, as explained above.

As to Allen's argument that the statement by the prospective juror who was a police dispatcher "taint[ed]" the jury,[34] we disagree. Even if the statement was seen to pertain to Allen's culpability in the civil case, the sole issue before the jury in this matter was damages. The question of Allen's liability for Torres' death had already been decided in Czech's favor on her motion for partial summary judgment. Otherwise, the prospective juror said only that he was not sure he would be able to "set aside" the knowledge he had acquired from his work as a police dispatcher and "make a decision based on what's presented here in court." The jury selection process is intended to elicit precisely this information.[35] As such, a prospective juror's statement that he or she is unsure he or she could set aside his or her personal knowledge and be impartial cannot, without more, be seen to taint the other jurors.

[10] There was also no plain error "presented" by this statement,[36] or by the statement of the juror who confused the terms "partial" and "impartial." Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.[37] However, we see nothing in the statements here

---

[33] See *Irvin, supra* note 23 (attaching of 46 exhibits by defendant to motion for change of venue).

[34] Brief for appellant at 18.

[35] See, e.g., *Davis v. McBride*, 221 W. Va. 240, 245, 654 S.E.2d 364, 369 (2007) ("[t]he primary goal of the jury selection process is to obtain a jury that will fairly and impartially decide the case at hand"); *State v. Fullwood*, 343 N.C. 725, 732, 472 S.E.2d 883, 886 (1996) ("'[t]he primary goal of the jury selection process is to ensure selection of a jury comprised only of persons who will render a fair and impartial verdict'").

[36] Brief for appellant at 18.

[37] *State v. Horne*, 315 Neb. 766, 1 N.W.3d 457 (2024).

that prejudicially affected Allen's substantial rights or that resulted in damage to the integrity, reputation, or fairness of the judicial process.

## Allen Failed to Preserve Claim Regarding Overruling of Motion in Limine

In his second assignment of error, Allen argues that the district court erred in overruling his motion in limine to exclude evidence of his criminal convictions. Allen argues that this evidence was inadmissible under § 27-609(5) because the time for him to seek certiorari from the U.S. Supreme Court had not yet expired. Allen also argues that the evidence should have been excluded under § 27-403 because it was unfairly prejudicial to him. Czech, in turn, argues primarily that Allen failed to preserve this claim for appellate review.

[11] As we have stated, a motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury.[38] It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence.[39] Therefore, when a court overrules a motion in limine to exclude particular evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court.[40] We also note that while the foregoing propositions expressly refer to "the jury" and "trial," they have previously been applied to hearings on motions for summary judgment when an issue is resolved there, and not at trial.[41]

Based on the record before us, we agree with Czech that Allen failed to preserve his claim regarding the overruling of his motion in limine. In this case, Allen's liability for Torres'

---

[38] *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024).

[39] *Id*.

[40] *Id*.

[41] See, e.g., *Molt v. Lindsay Mfg. Co.*, 248 Neb. 81, 532 N.W.2d 11 (1995) (plaintiff who did not object when evidence was offered at summary judgment hearing failed to preserve his objection to evidence and waived any complaint about it on appeal).

death was determined on Czech's motion for partial summary judgment. Among the evidence that Czech offered in support of that motion was an exhibit showing Allen's convictions. Allen apparently did not file an objection to that exhibit. (We say "apparently" because the record on appeal does not include the exhibit with Allen's written response to Czech's motion for partial summary judgment.) However, the record does contain an order from the district court stating that Allen did not file an objection to Czech's exhibit showing his convictions. Insofar as Allen may wish to contest that statement by the district court, he failed to present a record that would support such a claim.[42]

In finding that Allen failed to preserve this assignment of error, we are cognizant that at various points during the proceedings below, Allen argued that his convictions were not final because of purported appeals. However, we view the term "objection" to be a term of art, denoting a "formal statement" opposing, as relevant here, the offer of an item of evidence and "seeking the judge's immediate ruling on the point."[43] As such, we decline to view Allen's recurring argument that his convictions were not final as an "objection" in the sense described above.

### ALLEN'S CLAIM REGARDING GRANT OF PARTIAL SUMMARY JUDGMENT TO CZECH IS WITHOUT MERIT

Allen's third assignment of error concerns the district court's grant of partial summary judgment in Czech's favor on the question of liability for Torres' death. Allen argues that summary judgment was not proper because there was a genuine issue of material fact as to whether his convictions were

---

[42] See, e.g., *State v. Lara*, 315 Neb. 856, 2 N.W.3d 1 (2024) (absent record supporting errors assigned by appellant, appellate court will affirm lower court's decision regarding those errors), *cert. denied* ___ U.S. ___, 144 S. Ct. 2608, 219 L. Ed. 2d 1256.

[43] Black's Law Dictionary 1241 (10th ed. 2014). See, also, 2 Bouvier's Law Dictionary and Concise Encyclopedia 2390-91 (8th ed. 1914).

final. Allen also claims that the district court plainly erred in granting Czech's motion for partial summary judgment. Czech takes a different view. Czech argues that the question to which Allen points is a question of law, and not a genuine issue of material fact. Czech also argues that Allen's convictions were final because that had been affirmed on direct appeal.

[12] Even assuming that Allen is correct and that evidence of his convictions should not have been considered at the hearing on Czech's motion for partial summary judgment, we must affirm the order of the district court here. We do so because the record on appeal is insufficient to determine whether it was error for the district court to grant Czech's motion for partial summary judgment. "'Affidavits, depositions, and other evidence considered at a hearing on a motion for summary judgment must be preserved in a bill of exceptions filed in the court before an order on such a motion may be reviewed.'"[44] Where such materials are lacking, it is "presumed that the order of the trial court was supported by the evidence and was correct."[45]

For example, in *Keystone Ranch Co. v. Central Neb. Pub. Power & Irr. Dist.*,[46] we found that the parties' assignments of error relating to the motions for summary judgment were without merit because the requisite materials were not preserved in the record on appeal. In particular, we noted that there was "no bill of exceptions concerning the evidence which may have been offered at the hearing on the motion for summary judgment."[47] Given the absence of those materials, we concluded that "there is nothing to review" and that we "cannot determine whether error occurred."[48]

---

[44] *Shuck v. Jacob*, 250 Neb. 126, 131, 548 N.W.2d 332, 336 (1996).

[45] *Keystone Ranch Co. v. Central Neb. Pub. Power & Irr. Dist.*, 237 Neb. 188, 192, 465 N.W.2d 472, 476 (1991).

[46] *Id*.

[47] *Id*. at 191, 465 N.W.2d at 475.

[48] *Id*.

We took a similar view of the record on appeal in *Shuck v. Jacob*,[49] although we disagreed with the Court of Appeals' holding that the defendant's original and supplemental praecipes in that case were not specific enough to impose an obligation on the court reporter to create a record of the summary judgment proceedings. We reasoned that while it is incumbent upon the party appealing to present a record which supports the errors assigned, once the appellant has made an adequate request, the preparation of the bill of exceptions becomes an internal court matter and it is the duty of the reporter to properly fulfill the request.[50] In that case, the defendant's request for a praecipe included "'[a]ll exhibits entered into evidence.'"[51] As such, we concluded that the omission should be charged to the reporter and not the defendant.

In the present case, as in *Keystone Ranch Co.* and *Shuck*, the record does not contain all the affidavits, depositions, and other evidence considered at the hearing on the motion for partial summary judgment. Specifically, the record lacks exhibit 6, which contained Allen's letter and affidavit in opposition to Czech's motion for partial summary judgment. Moreover, unlike in *Shuck*, the record before us in case No. 24-047 lacks Allen's praecipes, precluding us from concluding that the omission of exhibit 6 is to be attributed to the reporter, and not to Allen.

[13] It is incumbent on the party appealing to present a record that supports the errors assigned; absent such a record, as a general rule, the decision of the lower court as to those errors will be affirmed.[52] Allen failed to meet his burden here. We thus presume that the order of the trial court granting

---

[49] *Shuck, supra* note 44.

[50] See *id*.

[51] *Id*. at 132, 548 N.W.2d at 337.

[52] *JCB Enters. v. Nebraska Liq. Cont. Comm.*, 275 Neb. 797, 749 N.W.2d 873 (2008).

partial summary judgment to Czech was supported by the evidence and was correct.

### Allen's Claims Regarding Order of Prejudgment Attachment Are Moot

Allen's fourth assignment of error concerns the overruling of his objection and motions challenging the order of prejudgment attachment. Allen argues that the district court's rulings here abridged his due process and statutory rights and that Czech was not entitled to prejudgment attachment under Nebraska law. Czech disagrees and argues that the issue of the order of prejudgment attachment is moot, given the subsequent jury verdict of $130,000 in favor of her and against Allen.

[14-16] Mootness refers to events occurring after the filing of a suit that eradicate the requisite personal interest in the dispute's resolution that existed at the beginning of the litigation.[53] The central question in a mootness analysis is whether changes in circumstances have forestalled any occasion for meaningful relief.[54] Although mootness does not prevent appellate jurisdiction, it is a justiciability doctrine that can prevent courts from exercising jurisdiction.[55]

Recently, in an unpublished portion of its opinion in *Keading v. Keading*,[56] a California appellate court declined to consider the defendant's arguments challenging a prejudgment writ of attachment because it found those issues to be moot in light of the subsequent judgment in the case. The court began by noting that "[a]ttachment is an ancillary or provisional remedy to aid in the collection of a money demand by seizure of property in advance of trial and judgment."[57] The court then reasoned that even if the defendant was correct in his claims

---

[53] *City of Hastings v. Sheets*, 317 Neb. 88, 8 N.W.3d 771 (2024).

[54] *Id*.

[55] *Chaney v. Evnen*, 307 Neb. 512, 949 N.W.2d 761 (2020).

[56] *Keading v. Keading*, 60 Cal. App. 5th 1115, 275 Cal. Rptr. 3d 338 (2021).

[57] *Id*. at 1130, 275 Cal. Rptr. 3d at 349 (unpublished portion) (internal quotation marks omitted).

that the writ should not have been issued ex parte and that he had no legal or equitable interest in the property for which the writ was issued, the court could not provide him meaningful relief because of the subsequent judgment against him.[58] The court explained that "the challenged prejudgment attachment order has now been superseded by the amended judgment in the case."[59] As such, the court concluded that the appeal of that order is moot.[60] Other courts have taken a similar view.[61]

We agree with the reasoning of those courts. An order of prejudgment attachment is a "'provisional remedy' that aims only to protect the property until final disposition of the case."[62] Once there is a final disposition, it is that disposition, and not the order of prejudgment attachment, that is controlling.[63] In this case, a judgment has now been entered in favor of Czech and against Allen, and Allen does not assign any error on appeal as to that judgment. As such, even if we were

_____

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] See, e.g., *Lakeshore House Limited Partnership v. Bank of the West*, No. 75501, 2019 WL 1875608 (Nev. 2019) (unpublished disposition) (appellants' argument that prejudgment writ of attachment was improvidently issued is moot in light of final judgment); *New Hartford v. CT Resources Recovery Auth.*, 291 Conn. 502, 506, 970 A.2d 578, 581 (2009) (defendant's claim that trial court improperly granted plaintiff prejudgment attachment is moot because that order "expired upon issuance of the judgment"); *Cull v. Vadnais*, 122 R.I. 249, 252, 406 A.2d 1241, 1242 (1979) (questions regarding whether order granting prejudgment attachment of real property is properly appealable and whether property held as tenancy by entirety is exempt from prejudgment attachment "have become moot as a result of the [trial court's] disposition of this case on its merits").

[62] *Blackmore v. L & D Development, Inc.*, 274 P.3d 316, 317 (Utah 2012).

[63] Cf. *Mo Dept of Health & Sr Services v. Dickson*, 530 S.W.3d 516, 521 (Mo. App. 2017) ("'[t]emporary orders, which by their nature expire and are superseded by a subsequent judgment on the merits, generally are not subject to review, either by interlocutory appeal or couched in an appeal of the final judgment'").

to agree with Allen that the order of prejudgment attachment in this case was improperly granted and should have been vacated, our doing so would not provide him any meaningful relief in the present appeal because it would not change his obligations under the judgment.

We are aware that Allen also raised issues with the order of prejudgment attachment in conjunction with his appeal of the partial denial of his motion for return of seized property in *State v. Allen*.[64] However, Allen does not renew those arguments here, and in that case, the district court did not rely on the order of prejudgment attachment in declining to return any property.[65]

### No Error or Abuse of Discretion in Denying Motion for Writ of Habeas Corpus ad Testificandum

Allen's fifth assignment of error concerns the denial of his motion to have a witness, who was imprisoned, be produced at trial or be able to testify by video conferencing. On appeal, Allen argues that this witness was present when he shot Torres and had "direct knowledge" of matters at issue, including "any pain [Torres] may have suffered."[66] As such, Allen argues that the "exclusion" of the witness' testimony "substantially prejudiced" him and deprived him of his right to fundamentally fair judicial proceedings.[67]

Czech, on the other hand, points to Allen's statement at trial that the only testimony he anticipated from the witness was that she and Allen were "chased and cornered" by Torres and that Allen "didn't provoke anybody with violence." Based on that statement, Czech argues that the witness' testimony was not relevant to the question of damages, which was all that remained to be determined at trial.

---

[64] See *Allen, supra* note 3.

[65] See *id.*

[66] Brief for appellant at 11, 16.

[67] *Id.* at 16.

Czech is correct that neither Allen's motion for writ of habeas corpus ad testificandum, nor his arguments at trial, contemplated the witness' testifying about Torres' pain and suffering. However, even if we were to view the witness' testimony as relevant to that question, the district court still cannot be seen to have erred or abused its discretion in denying Allen's motion because that motion was not filed until after the trial had started. As such, we agree with the district court that Allen's motion was untimely, a factor that courts in other jurisdictions have noted when affirming the denial of a motion for writ of habeas corpus ad testificandum.[68] As one court explained, "[I]f the right to the writ for the production of a jailed witness were absolute in the sense that the writ must be issued and executed whenever demand is made, it would be within the power of [the defendant] to compel a continuance by making a late demand."[69]

In the hearing on his motion, Allen did argue that he had only recently learned the witness' address within the Nebraska Department of Correctional Services system. However, Allen also said that he knew the witness' location prior to that. According to Allen, the witness was previously in jail in Lincoln County and he "didn't have a way of contacting her there." However, insofar as Allen knew the witness' location at an earlier date, he could have filed a motion for writ of habeas corpus ad testificandum at that time.

### DISTRICT COURT WAS NOT DIVESTED OF JURISDICTION BY APPEAL IN CASE NO. S-23-1307

Allen's final assignment of error concerns the denial of his motion to stay proceedings, pending his appeal in case No. S-23-1037. Allen argues that the district court erred in denying his motion to stay proceedings because he had filed an appeal, and "[g]enerally, a trial court loses jurisdiction once

---

[68] See, e.g., *Neufield v. United States*, 118 F.2d 375 (1941); *Armstrong v. Randle*, 881 S.W.2d 53 (Tex. App. 1994); *Ross v. Com.*, 577 S.W.2d 6 (Ky. App. 1977).

[69] *Neufield, supra* note 68, 118 F.2d at 385.

a party appeals."[70] Czech, in contrast, argues primarily that no appeal had yet been filed when Allen's motion to stay proceedings was overruled.

[17] Although Czech is correct that no appeal had been filed when the district court overruled Allen's motion to stay proceedings, the appeal in case No. S-23-1037 was filed later that same day. However, even after that appeal was filed, the district court was not "divested" of jurisdiction, as Allen argues.[71] That is because notwithstanding the language from our prior opinions quoted by Allen, with the exception of limited acts of continuing jurisdiction not applicable here, an appeal must have been perfected for the trial court to lose its jurisdiction.[72] And an appeal is not perfected and an appellate court acquires no jurisdiction unless the appellant has satisfied the statutory requirements for appellate jurisdiction by appealing from a final order or a judgment.[73]

Here, for the reasons set forth above, the appeal in case No. S-23-1037 was not from a final order or a judgment or decree rendered. Therefore, the district court did not lose its jurisdiction as a result of that appeal, and it cannot be said to have erred or abused its discretion in denying Allen's motion to stay proceedings based on its purported lack of jurisdiction.

## CONCLUSION

Because the orders that Allen challenges in case No. S-23-1037 are not final orders, that case is dismissed for lack of jurisdiction. Finding no merit to Allen's arguments in case No. S-24-047, we affirm the orders of the district court.

Appeal in No. S-23-1037 dismissed.

Judgment in No. S-24-047 affirmed.

Miller-Lerman, J., participating on briefs.

---

[70] Brief for appellant at 12 (citing *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016)).

[71] Brief for appellant at 12.

[72] See *Dugan v. State*, 297 Neb. 444, 900 N.W.2d 528 (2017).

[73] *Id.*