Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/11/2025 09:09 AM CDT

Mark D. Elbert, appellant, v. Keating, O'Gara,
Nedved & Peter, P.C., L.L.O., appellee.

___ N.W.3d ___

Filed July 11, 2025.    No. S-23-893.

1. **Jurisdiction: Appeal and Error.** The question of appellate jurisdiction is a question of law.
2. \_\_\_\_: \_\_\_\_. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
3. **Jurisdiction: Judgments: Final Orders: Appeal and Error.** To determine whether it has jurisdiction, an appellate court looks to Neb. Rev. Stat. §§ 25-1911 (Reissue 2016) and 25-1912 (Cum. Supp. 2024). Together, these statutes generally prescribe that for an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a judgment or decree rendered or from a final order.
4. **Judgments: Final Orders: Words and Phrases.** A "judgment rendered," as required by Neb. Rev. Stat § 25-1911 (Reissue 2016), is a final determination of the rights of the parties in an action, which is set forth by the court in a single, signed written document stating all of the relief granted or denied in an action.
5. **Judgments.** Interlocutory orders are the building blocks for a judgment but are not a substitute for rendering a judgment that states all the relief granted or denied in an action.
6. \_\_\_\_. Until judgment is rendered in an action, all nonfinal orders entered are interlocutory in nature and subject to revision.
7. **Judgments: Appeal and Error.** The purpose of Neb. Rev. Stat. § 25-1301(2) (Cum. Supp. 2024) is to add clarity so that parties know whether and when the court has rendered a judgment from which they must timely file a notice of appeal to protect their right to appellate review.
8. **Jurisdiction: Judgments.** The requirement in Neb. Rev. Stat. § 25-1301(2) (Cum. Supp. 2024) that judgments be rendered by signing

a single written document stating all of the relief granted or denied in an action is not just codification of a preferred practice; it is a jurisdictional prerequisite.

9. **Jurisdiction: Final Orders: Appeal and Error.** When an order adjudicates fewer than all the claims of all the parties, appellate jurisdiction cannot be created merely by voluntarily dismissing, without prejudice, the claims on which the court has not yet ruled.

10. **Jurisdiction: Judgments: Final Orders: Appeal and Error.** Where the court has neither rendered a judgment, certified a final judgment under Neb. Rev. Stat. § 25-1315 (Reissue 2016), nor entered a final order, appellate jurisdiction cannot be created merely by voluntarily dismissing unresolved claims without prejudice.

Appeal from the District Court for Sarpy County: Michael A. Smith, Judge. Appeal dismissed.

Theodore R. Boecker, Jr., of Boecker Law, P.C., L.L.O., for appellant.

Nathan D. Clark, Andre R. Barry, and Nathan T. Heimes, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, and Freudenberg, JJ.

Per Curiam.

## INTRODUCTION

Mark D. Elbert filed a defamation action against a law firm and one of its lawyers, and the law firm counterclaimed and requested costs and attorney fees for defending the action. When Elbert's operative amended complaint was later dismissed for failure to state a claim, he filed an appeal that was dismissed for lack of appellate jurisdiction due to the unresolved counterclaim and fee request. The law firm then filed a motion to voluntarily dismiss its counterclaim without prejudice, and the court entered an order granting that motion. Elbert appealed again. Because we still lack appellate jurisdiction, we must dismiss this appeal.

## BACKGROUND

Elbert has filed two defamation actions against the law firm of Keating, O'Gara, Nedved & Peter, P.C., L.L.O. (the Firm), and one of its attorneys, Gary Young. The first action was filed in 2018 and was addressed by this court in *Elbert v. Young* (*Elbert I*).[1] The current appeal involves the second action, which was filed in 2019 but shares much of the same factual and procedural background as the first action, so we summarize both actions for context.

## 2018 ACTION

In September 2018, Elbert sued Young and the Firm (collectively the defendants) in the district court for Lancaster County, in a matter docketed as case No. CI 18-1765. At the time, Elbert was the chief of police for Bellevue, Nebraska, and the defendants represented the local police union and several union members.

Elbert's operative complaint alleged that in 2017, the police union expressed a "no-confidence" vote against Elbert as police chief. After that vote, the union issued a press release drafted by the defendants, asserting there was "substantial evidence" that Elbert had engaged in "dishonest and deceptive conduct" in carrying out his duties. The press release also claimed that Elbert had initiated multiple internal investigations of union leaders in retaliation for union activity and that he made "derogatory comments towards women and racial minorities."

Elbert also alleged that the defendants assisted Bellevue police officers in drafting informal complaints against Elbert that were filed with the Nebraska Commission on Law Enforcement and Criminal Justice; these complaints alleged that Elbert had instructed employees to lie and conceal information. Elbert also alleged the defendants drafted, on the union's behalf, an "Allegation/Inquiry/Commendation" form

---

[1] *Elbert v. Young*, 312 Neb. 58, 977 N.W.2d 892 (2022).

that was submitted to the Bellevue Police Department, alleging dishonesty by Elbert.

Based on these factual allegations, Elbert's 2018 complaint sought to recover damages for defamation, libel, slander, false light, and civil conspiracy to place him in a false light. The defendants filed a counterclaim, alleging that Elbert commenced and continued the action for the purpose of harassing, intimidating, or punishing the defendants or otherwise maliciously inhibiting their exercise of petition and speech rights.[2] The counterclaim sought compensatory damages, as well as costs and attorney fees incurred in defending the action.

In February 2021, the district court granted the defendants' motion for summary judgment and dismissed Elbert's operative complaint, taxing costs to Elbert. Approximately 10 days later, the court memorialized the defendants' acceptance of Elbert's offer to confess judgment on the counterclaim,[3] and it entered judgment in favor of the defendants in the amount of $1, inclusive of any claim for attorney fees or costs.

Elbert then filed a notice of appeal, assigning error to the summary judgment ruling. In *Elbert I*, we affirmed the summary judgment.

2019 ACTION

In September 2019, while the first action was still pending, Elbert filed another complaint against both Young and the Firm, docketed as case No. CI 19-1684. Because Young was not served within 180 days after the 2019 action was commenced, he was dismissed from the action by operation of law[4] and the action proceeded only against the Firm.

Many of the factual allegations of the 2019 complaint were identical in form and substance to the 2018 complaint. But the 2019 complaint also included allegations pertaining to Young's statements at a press conference on September 13,

---

[2] See Neb. Rev. Stat. § 25-21,243 (Reissue 2016).

[3] See Neb. Rev. Stat. § 25-901 (Cum. Supp. 2024).

[4] See Neb. Rev. Stat. § 25-217 (Cum. Supp. 2024).

2018, which was held after the 2018 action was commenced, and after Elbert had been reinstated as police chief following an investigation commenced against Elbert by Young and the Firm. Elbert alleged that Young held the September 2018 press conference because he was "displeased with his failure to cause the termination of Elbert's position as Chief of Police."

Elbert alleged that the statements made by Young at the 2018 press conference were false and misleading and that they included statements that Elbert directed others to lie, improperly modified test results, engaged in retaliatory conduct, and made derogatory statements toward racial minorities. Elbert alleged that Young knew or should have known these statements were false, that Young acted with actual malice, and that Young and the Firm refused Elbert's demand to retract the statements. Elbert also alleged that the statements made at the September 2018 press conference were defamatory per se because they imputed to Elbert the commission of a crime involving moral turpitude or unfitness to perform the duties of an office or employment and because they were made with the intent to prejudice Elbert in his profession as a law enforcement officer and chief of police.

Elbert's operative complaint alleged that at all relevant times, Young was acting as an agent and member of the Firm, but it also alleged that Young's statements at the September 2018 press conference were not "made during the course of representation of any client" and instead were made "to gain publicity and notoriety for himself and to thereby generate revenue for himself and the [F]irm." Elbert prayed for an award of special and general damages, prejudgment and postjudgment interest, and attorney fees.

The Firm filed an answer denying liability and alleging several affirmative defenses, including that (1) any claims based on statements made before the September 2018 press conference were barred by the statute of limitations; (2) any statements made by the Firm to Nebraska's crime commission, the Sarpy County sheriff's office, or the city of Bellevue

were absolutely privileged; and (3) any statements by the Firm about Elbert were qualifiedly privileged. The Firm's answer also included a counterclaim alleging that Elbert's 2019 complaint was brought for the purpose of harassing, intimidating, or punishing the Firm or otherwise maliciously inhibiting its petition and speech rights. The Firm generally refers to Elbert's 2019 action as a "SLAPP action"[5] and refers to its counterclaim as an "anti-SLAPP counterclaim."[6] The Firm's counterclaim prayed for compensatory damages, as well as its costs and attorney fees in defending the action.[7]

The 2019 action was stayed during the pendency of the appeal in the 2018 action. After our opinion in *Elbert I* resolved the 2018 action, the Firm moved for judgment on the pleadings in the 2019 action. The district court granted that motion but gave Elbert leave to file an amended complaint. Elbert filed his operative amended complaint in February 2023, and the Firm moved to dismiss it pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6) (codified in 2008) for failure to state a claim.

In an order entered April 20, 2023, the district court granted that motion, and it dismissed Elbert's operative complaint without leave to amend. The order taxed costs to Elbert, but it did not address the Firm's pending counterclaim or its request for attorney fees in defending the action.

Elbert filed a notice of appeal on May 19, 2023, assigning error to the dismissal of his operative complaint. The Nebraska Court of Appeals summarily dismissed that appeal

---

[5] Supplemental brief for appellee at 5. See, generally, Neb. Rev. Stat. §§ 25-21,241 to 25-21,246 (Reissue 2016) (governing adjudication of § 25-21,241 "strategic lawsuits against public participation," or "SLAPP," actions).

[6] Supplemental brief for appellee at 5.

[7] See, generally, § 25-21,243(1) (authorizing defendant in SLAPP action to maintain counterclaim to recover compensatory damages, costs, and attorney fees).

for lack of jurisdiction,[8] explaining that the order of April 20 did not resolve the pending counterclaim or the related request for attorney fees.

Once the case was back before the district court, the Firm filed a motion to voluntarily dismiss its "[a]nti-SLAPP counterclaim" without prejudice pursuant to Neb. Rev. Stat. § 25-601 (Reissue 2016). Elbert did not file an objection to the motion, nor did he request a hearing or seek conditions on the dismissal.[9] In an order entered October 10, 2023, the court granted the Firm's motion and dismissed its counterclaim without prejudice. The dismissal order did not mention any other relief granted or denied in the action.

Within 30 days thereafter, Elbert filed another notice of appeal. We moved the appeal to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Elbert assigns multiple errors on appeal, all of which challenge different aspects of the district court's order dismissing the operative complaint pursuant to § 6-1112(b)(6).

## STANDARD OF REVIEW

[1] The question of appellate jurisdiction is a question of law.[10]

## ANALYSIS

[2,3] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[11] To do so, we look first to Neb. Rev. Stat. §§ 25-1911 (Reissue 2016) and

---

[8] See Neb. Ct. R. App. P. § 2-107(A)(1) (rev. 2022).

[9] See *Millard Gutter Co. v. American Family Ins. Co.*, 300 Neb. 466, 915 N.W.2d 58 (2018).

[10] *Saint James Apt. Partners v. Universal Surety Co.*, 316 Neb. 419, 5 N.W.3d 179 (2024).

[11] *State ex rel. Hilgers v. Evnen*, 318 Neb. 803, 19 N.W.3d 244 (2025).

25-1912 (Cum. Supp. 2024).[12] Together, those statutes generally prescribe that for an appellate court to acquire jurisdiction of an appeal, the party must be appealing from a judgment or decree rendered or from a final order.[13]

Here, neither party contends that any of the orders entered in this action were final orders as defined in Neb. Rev. Stat. § 25-1902 (Cum. Supp. 2024), and we agree that none of the orders fall into any of the four statutory categories. And since no party requested that the court certify a final judgment pursuant to § 25-1315 as to any claim, the jurisdictional question presented in this appeal is whether a final judgment has been rendered.

We thus begin our jurisdictional analysis by reviewing the principles that govern rendition of judgments. Ultimately, we conclude there are two reasons we lack appellate jurisdiction in this case: The trial court has not yet rendered a judgment, and the Firm's voluntary dismissal without prejudice of the unresolved counterclaim did not create appellate jurisdiction where it otherwise did not exist.

NO JUDGMENT RENDERED

[4] Under Neb. Rev. Stat. § 25-1301(1) (Reissue 2016), a judgment is "the final determination of the rights of the parties in an action." And as amended in 2020, § 25-1301(2) (Cum Supp. 2024) defines "[r]endition of a judgment" as "the act of the court, or a judge thereof, in signing a single written document stating all of the relief granted or denied in an action." Given these definitions, we recently explained that a "judgment rendered," as required by § 25-1911, "is a final

---

[12] See, *Czech v. Allen*, 318 Neb. 904, 21 N.W.3d 1 (2025); *D&M Roofing & Siding v. Distribution, Inc.*, 316 Neb. 952, 7 N.W.3d 868 (2024); *Johnson v. Vosberg*, 316 Neb. 658, 6 N.W.3d 216 (2024).

[13] See *Czech, supra* note 12. But see Neb. Rev. Stat. § 25-1315 (Reissue 2016) (when more than one claim for relief is presented in action, or when multiple parties are involved, court may direct entry of final judgment as to one or more but fewer than all of claims or parties under specified circumstances).

determination of the rights of the parties in an action, which is set forth by the court in a single, signed written document stating all of the relief granted or denied in an action."[14] And pursuant to Neb. Rev. Stat. § 25-914 (Reissue 2016), "'[e]very direction of a court or judge, made or entered in writing and not included in a judgment, is an order.'"

[5,6] Neither the order of April 20, 2023, granting dismissal of the operative complaint under § 6-1112(b)(6), nor the order of October 10 dismissing the Firm's counterclaim without prejudice rendered a judgment. Instead, both orders were interlocutory in nature and simply represented steps in the action. Although we have described orders as "'the building blocks for a judgment,'"[15] a series of orders is not a substitute for rendering a judgment that states all the relief granted or denied in an action.[16] Moreover, until judgment is rendered in an action, all nonfinal orders entered are interlocutory in nature and subject to revision.[17]

[7] The purpose of § 25-1301(2) (Cum. Supp. 2024) is to add clarity so that the parties know whether and when the court has rendered a judgment from which they must timely file a notice of appeal to protect their right to appellate review.[18] Here, the court entered an order ruling on the motion to dismiss the operative complaint and subsequently entered an order granting the Firm's motion to voluntarily dismiss its pending counterclaim without prejudice. But the court has not

---

[14] *D&M Roofing & Siding, supra* note 12, 316 Neb. at 968, 7 N.W.3d at 881.

[15] *Id*. at 969, 7 N.W.3d at 882.

[16] See *D&M Roofing & Siding, supra* note 12.

[17] See § 25-1315 (absent certification under this statute, any order or other form of decision, however designated, which adjudicates fewer than all claims against all parties is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties"). See, also, *Millard Gutter Co., supra* note 9 (order granting partial summary judgment was interlocutory, and court was free to vacate or revise it any time prior to entry of final judgment adjudicating all claims and rights of all parties).

[18] *D&M Roofing & Siding, supra* note 12.

yet signed a "single written document" as now specified in § 25-1301(2) constituting the final determination of the rights of the parties and stating all the relief granted or denied in the action, and it therefore has not yet rendered judgment.

[8] Since 2020, § 25-1301(2) has required judgments to be rendered by signing a single written document stating all of the relief granted or denied in an action. This is not just codification of a preferred practice; it is a jurisdictional prerequisite. Because no judgment has yet been rendered in this action, we lack appellate jurisdiction.

Even though the appellate record here contains no rendition of judgment, no final order, and no § 25-1315 certification, both parties contend that once the Firm's unresolved counterclaim was voluntarily dismissed without prejudice, there was no contested issue left for the district court to resolve and Elbert could therefore appeal from the prior order dismissing his operative complaint. We address this contention next, and we reject it.

### Appellate Jurisdiction Cannot Be Created by Voluntarily Dismissing, Without Prejudice, Unadjudicated Claims

[9] It is a settled rule in Nebraska that when an order adjudicates fewer than all the claims of all the parties, appellate jurisdiction cannot be created merely by voluntarily dismissing, without prejudice, the claims on which the court has not yet ruled.[19] Based on this precedent, we requested supplemental

---

[19] *Clason v. LOL Investments*, 316 Neb. 91, 3 N.W.3d 94 (2024); *Last Pass Aviation v. Western Co-op Co.*, 296 Neb. 165, 892 N.W.2d 108 (2017). See, also, *Addy v. Lopez*, 295 Neb. 635, 890 N.W.2d 490 (2017) (holding plaintiff could not voluntarily dismiss sole cause of action without prejudice and reserve right to appeal dismissal of one of three defendants); *Smith v. Lincoln Meadows Homeowners Assn.*, 267 Neb. 849, 678 N.W.2d 726 (2004) (holding plaintiff could not voluntarily dismiss action without prejudice and simultaneously reserve right to appeal order granting defendant partial summary judgment on damages aspect of premises liability claim).

briefing addressing the jurisdictional effect of the Firm's voluntary dismissal without prejudice of its unadjudicated counterclaim. Both parties submitted supplemental briefs, and we have carefully considered them.

In Elbert's supplemental brief, he acknowledges the rule that appellate jurisdiction cannot be created by voluntarily dismissing unresolved claims without prejudice, but he argues the rule should not be applied here because it was the appellee, not the appellant, who voluntarily dismissed the unadjudicated claim. Elbert raises a distinction without a difference.

Our cases have not limited application of the rule to only dismissals without prejudice by prospective appellants; we have also applied the rule when unresolved claims were dismissed without prejudice by joint stipulation of the parties,[20] and when unresolved claims were dismissed upon motion of the prospective appellees.[21] Regardless of which party files the motion, our cases consistently hold that appellate jurisdiction cannot be created by voluntarily dismissing, without prejudice, claims on which the court has not yet ruled.[22]

[10] We continue to adhere to this bright line rule. Where, as here, the court has neither rendered a judgment, certified a final judgment under § 25-1315, nor entered a final order, appellate jurisdiction cannot be created merely by voluntarily dismissing unresolved claims without prejudice. Such a procedure does not create appellate jurisdiction when there otherwise would be none. And allowing parties to manufacture appellate jurisdiction in this way would not only sanction an end run around the jurisdictional requirements of Neb. Rev. Stat. § 25-1901 (Reissue 2016), § 25-1902, § 25-1301, and § 25-1315, but it would also "effectively abrogate our long-established rules governing the finality and appealability of

---

[20] *Last Pass Aviation, supra* note 19.

[21] *Clason, supra* note 19.

[22] *Id*.; *Last Pass Aviation, supra* note 19; *Addy, supra* note 19; *Smith, supra* note 19.

orders, as the policy against piecemeal litigation and review would be severely weakened."[23]

## CONCLUSION

Because the appellate record does not reflect rendition of a judgment as defined by § 25-1301(2) or entry of a final judgment under § 25-1315, we lack jurisdiction over the present appeal. We therefore dismiss the appeal, and the district court retains jurisdiction to resolve the action as it deems appropriate.

APPEAL DISMISSED.

PAPIK, J., not participating.

---

[23] *Last Pass Aviation, supra* note 19, 296 Neb. at 170, 892 N.W.2d at 112 (internal quotation marks omitted). Accord *Addy, supra* note 19.